ESTES and others *v.* WORTHINGTON.

*(Circuit Court, S. D. New York.   January 5, 1885.)*

1. TRADE-MARK—INJUNCTION—LACHES.
    When delay of the owner of a trade-mark to prosecute infringers has been of a tendency to mislead the public, or the defendant sought to be enjoined, into a false security, and a sudden injunction would result injuriously, it ought not to be granted summarily, but the complainant should be left to his relief at final hearing.

2. SAME—USE OF TRADE-MARK BY OTHERS.
    Where the extensive use of a trade-mark by others, with the implied acquiescence of the owner, has contributed to give a reputation and create a demand for the article to which it has been applied, which it would not otherwise have acquired, equity should not by any stringent intervention assist the owner to secure these fruits.

3. SAME—COMPLAINANT GUILTY OF FRAUD.
    A complainant who has refused to recognize the rights of the original foreign proprietor of a trade-mark until he thought it would be more profitable to purchase his rights in this country, and thus obtain a monopoly, reserving the right to annul the contract at his discretion, will not be entitled to a preliminary injunction against alleged infringers of the trade-mark, but be left to his rights at final hearing.

Motion for Preliminary Injunction.

*J. L. S. Roberts* and *G. G. Frelinghuysen,* for complainants.

*Scudder & Carter,* for defendant.

WALLACE, J.   The validity of the complainants' title to a trade-mark in the word "Chatterbox," as applied to juvenile books, and which they acquired by purchase from James Johnstone, of England, in the year 1880, has been established, and is not open to controversy upon the case made by the defendants.   *Estes v. Williams,* 21 FED. REP. 189.   The only doubt as to the complainants' right to a preliminary injunction is suggested by the fact that the various publishers of such books since 1876 have been permitted without prosecution to apply the word to their publication of juvenile books in this country, and have used it as a trade-mark in hostility to the real proprietors;

and among them were the complainants themselves, who did so for two or three years before they purchased the right of Johnstone.

Laches in prosecuting infringers has always been recognized as a sufficient reason for denying a preliminary injunction; sometimes, apparently, by way of discipline to a complainant who has manifested reluctance to burden himself with the expense and vexation of a lawsuit, and delayed legal proceedings until his patience was exhausted. See *Bovill* v. *Crate*, L. R. 1 Eq. Cas. 388. When delay of the owner of a patent or trade-mark to prosecute infringers has been of a tendency to mislead the public or the defendant sought to be enjoined into a false security, and a sudden injunction would result injuriously, it ought not to be granted summarily, but the complainant should be left to his relief at final hearing. So also where as in this instance the extensive use of the trade-mark by others with the implied acquiescence of the owner has contributed to give a reputation and create a demand for the article to which it has been applied which it would not otherwise have acquired, equity should not by any stringent intervention assist the owner to secure these fruits. The complainants do not occupy a position that commends them to a court of equity; because they seem to have refused to recognize the rights of Johnstone, the original proprietor of the trade-mark, until they thought it would be more profitable to purchase his rights in this country and obtain a monopoly here in the use of the trade-mark. By their contract of purchase they reserved the right to annul the contract at their option. They should be left to their rights at final hearing according to the usual course of equity. The motion is denied.