LOCKLIN et al. v. BUCK.

(Circuit Court of Appeals, Second Circuit. January 7, 1908.)

No. 41.

PATENTS—INVENTION—WOVEN WIRE FABRIC.

The Locklin and Fox patent, No. 655,253, for an improvement in woven wire fabrics, which consists of coiled wire springs having the ends flattened to a common plane, and bound by a metallic strip folded longitudinally so as to inclose the ends of the strands and then folded again upon itself, the purpose being to hold the strands in place and to keep the fabric in place under strain, while for a useful improvement, is void for lack of invention in view of the prior art.

Appeal from the Circuit Court of the United States for the Eastern District of New York.

For opinion below, see 148 Fed. 715.

O. R. Barnett (Alfred W. Kiddle, of counsel), for appellants.

William Parmenter Martin (C. Lodd-Davis, of counsel), for appellee.

Before LACOMBE, WARD, and NOYES, Circuit Judges.

NOYES, Circuit Judge. The patent in suit is No. 655,253, and was issued on August 7, 1900, to the complainants for improvements in woven wire fabrics. The improvement relates primarily to the woven wire fabrics used in bed bottoms. They are formed of parallel coils of wire, spirally wound, forming springs capable of withstanding great tension.

The specification points out the difficulties previously existing in handling and shipping this coiled wire fabric on account of the tendency of its strands to spring out of place, separate, and entangle. For this reason, it is stated, it was necessary to employ experts to handle the fabric, and to market it only when permanently attached to frames. This added to the expenses of shipping and storage. Moreover, the prior methods of attaching the fabric to the frames were said to produce lack of uniformity in the tautness, and to be otherwise objectionable. To remedy these difficulties the patentees devised a bed bottom of coiled wire fabric, the raw ends of which should be subjected to these processes: (1) Flatten the ends to a common plane; (2) bind these flattened ends with a metallic strip folded thereon; (3) again fold this metallic binding upon itself; or, as stated in the claim:

"As a new article of manufacture, a woven wire fabric comprising woven coiled-wire springs having the ends thereof flattened to a common plane and bound by a metallic strip folded longitudinally so as to inclose the flattened ends of the coiled strands of the fabric and then folded again upon itself, substantially as described."

The proof fairly supports the statements of the specification. It also shows that articles manufactured under the patent have gone into general use. We may, therefore, start with the assumption that what the patentees devised was a useful improvement. But every improvement is not invention. The important inquiry is whether the patent discloses invention in view of the prior art. If no invention is found, the examination of other questions is unnecessary.

In the first place, then, was there invention in flattening the ends of the coiled springs to a common plane, so that the binding could be attached? The sketches in the record, made by the complainant Locklin, illustrating the earlier methods of attaching coiled wire fabrics to frames, show that the coils were always flattened for such purpose. The illustrations in the Brothers patent, No. 454,027, granted in 1891 for improvements in spring beds, show the coiled springs flattened and clasped between two pieces of metal. Clearly, therefore, the flattening of the coils in itself discloses no invention.

Was there invention in binding the flattened wire with a folded metallic strip, and then folding this binding upon itself? The patentees state in the patent:

"We are aware that wire netting for window screens and like purposes has been bound upon its edge."

The Rich patent, No. 507,844, issued in 1883, describes and illustrates wire cloth used in a window screen bound by a metallic strip, and the strip then folded upon itself, precisely as in the present patent. In this Rich patent the screen is to be raised and lowered upon a roller at the top, but without a separate spring. The netting is wound upon the roller under tension which gives it a permanent spiral set and thus enables it to act as its own spring. The metallic strip is bound over the lower edge of the screen and fits in a frame which moves up and down in standards. The application of the metallic folded strip to the woven wire fabric is the same in the Rich as in the present patent. The only difference is in the kind of woven wire. In the one case the strands of the wire are always upon a common plane. In the other, they are coiled and require flattening. But, as we have seen, no invention is involved in this flattening. The function of the metallic strip in the present patent is, as shown in the specification, to bind the edges of the fabric, and to hold the strands in place—in other words, to prevent unraveling, and to keep the fabric from pulling out under strain. Stress is laid upon the necessity of strength for holding the fabric under great strain. The metallic strip is said to be an anchorage as well as a binder. Its hold is said to be uniform, and not dependent upon other fastenings. But all these things are really but incidents of the functions of binding and holding. The evident function of the metallic strip in the Rich patent is likewise to bind the netting, and keep it from pulling out under the strain of the spring. That there would be a strain when the screen is lowered is manifest. And that the purpose of the strip was to stand that strain, as well as to bind, is evident from the patent, which points out particularly that the netting is secured by doubling it upon itself. There would be no especial object in this if a binder alone were desired. Now, manifestly, coiled spring fabric is more refractory than wire netting. Unquestionably mattresses must be capable of standing far more strain than window screens, even of the self-winding kind. But the real function of the metallic strip—to bind and to hold—is the same in the Rich patent as in the patent in suit. The difference is only in degree. These being the facts, the governing legal principles upon the question whether the Rich patent anticipates are clearly stated in the complainants' brief:

"When two analogous devices are found in arts remote one from another, when circumstances under which they are used are different, when they subserve different purposes and perform different functions, so that the earlier device would not naturally suggest to a mechanic skilled in the art of the other device the utility or applicability of the earlier device in the latter art, the earlier device cannot be used as an anticipation or as a limitation of the claims of a patent upon the later device."

The difficulty in this case is not in the principles, but in their application in favor of this patent. Here, the analogous devices are not found in remote arts. Both relate to woven wire fabrics. The manufacture of window screens from one kind of woven wire may be a branch of industry distinct from the manufacture of mattresses from another kind of woven wire, but the relationship is by no means remote. Here, we have seen that the analogous devices do not subserve different purposes and perform different functions. Here, we cannot say that the Rich device, if brought to the attention of a skilled mechanic, working upon the problem of binding and holding bed bottoms, would not naturally suggest to him its use for such purpose. On the contrary, it would seem that such use would readily occur to him. Of course, as the judge at circuit points out, it was six years after the Rich patent before the new application was made. But we cannot assume, as a matter of fact, that any one but the complainants did have both the problem and the Rich patent before him.

The commercial success of the article manufactured under the complainants' patent is also pointed out as indicating invention. But this is only one element to be considered, and then only when patentability is doubtful. Moreover, it is not entirely clear that this commercial success is not in some measure due to the machines used by the complainants and their licensees for attaching the binder.

For these reasons, we hold the patent in suit invalid for want of invention in view of the prior art.

The decree of the Circuit Court is affirmed, with costs.