BENJAMIN ELECTRIC MFG. CO. v. NORTHWESTERN ELECTRIC EQUIPMENT CO.

(Circuit Court of Appeals, Second Circuit. April 10, 1918.)

No. 186.

1. PATENTS ⊜48—INVENTION—SMALL SIZE—"MIDGET"—"DWARF."
 An electric attachment plug, designated as "midget," or "dwarf," is not patentable because it is small, though its compact size makes it more convenient than larger plugs.

2. PATENTS ⊜328 — INVENTION — INFRINGEMENT — "BASE" — "BUSHING" — "BUTT"—"TIP"—"CARRY."
 The Benjamin patent, No. 1,012,970, for an electric attachment plug, comprising a base having an exposed end contact and a recess at its side, an outer contact, consisting of a removable sleeve immediately surrounding and inclosing the base, said sleeve being rotatable independent of the base, etc., *held* to show invention, and to be infringed by defendant's device—the word "base," which has no invariable meaning in mechanics, as well as the term "bushing," adopted in describing the device, being practically equivalent to the expressions "butt" and "tip," used in connection with defendant's device; nor was the invention limited by the word "carry," used in one of the claims, for that is a most general term.

 [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Base; Carry.]

3. PATENTS ⊜35—INVENTION—COMMERCIAL SUCCESS.
 Great commercial success, which enables a device to displace existing appliances, is evidence of invention, and a reason for a broad construction of the claims of a patent.

4. PATENTS ⊜36—CONSTRUCTION—BROAD CONSTRUCTION.
 Acquiescence, not only assists in finding invention, but justifies breadth of construction of the patent itself.

Appeal from the District Court of the United States for the Southern District of New York.

---

⊜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Suit by the Benjamin Electric Manufacturing Company against the Northwestern Electric Equipment Company. From a decree for complainant, defendant appeals. Affirmed.

Appeal from decree in equity entered in the District Court for the Southern District of New York. Action is upon claims 3, 6, 12, 25, and 28 of patent 1,012,970, issued December 26, 1911, to R. B. Benjamin, for that form of electric device known as a "swivel attachment plug." The stated objects of invention are to give "ready access to the binding posts," for ease of connection, and to produce a form that "can readily be inserted in a socket without twisting the connecting wires." Of the claims at bar, No. 3 is the most general, and is as follows:

"An attachment plug comprising a base having an exposed end contact and a recess in its side, an outer contact consisting of a removable sleeve immediately surrounding and inclosing the base, said sleeve being rotatable independently of the base to connect the plug in position for use, and a binding post for the sleeve conductor located in the recess and concealed by the sleeve, but being disclosed when the said sleeve is removed."

While No. 25 serves to present sharply one of the principal arguments of defendant, and reads thus:

"An attachment plug comprising a rotatable threaded sleeve, having a handhold, and two body portions, one having a handhold, and the other carrying all of the electrical conducting parts, except the said sleeve."

The definitions of invention in the other claims do not vary enough to justify further quotation.

The Benjamin device entered (about 1909) a market already supplied with swivel plugs of at least three makes. Electrically it contains nothing new; that is, it confessedly carries current, provides insulation, and makes connection with fixed wires, just as do all the plugs (e. g.) commonly used for domestic electric lighting, and forming one end of the "electric light bulb" well known even to housekeepers. Its commercial success, whether measured by sales or acquiescence evidenced by royalty agreements, has been very marked. Its compactness produces a size that has given it the trade name of "dwarf" or "midget"; its cost is less than earlier swivel devices. It is proven that in the seven years, or thereabouts, between its introduction and the date of this suit, it drove all preceding swivel plugs out of the market.

Defendants sell what is known as the "Best" plug, a product of the Best Manufacturing Company, which defends upon the ground that the claims in suit, unless so restrained by the disclosure and prior art as to negative infringement, are invalid.

The trial court found infringement of all the claims before us, and from decree accordingly defendant appeals.

Frederick W. Winter, of Pittsburgh, Pa., and Oscar W. Jeffery and E. Henry Lacombe, both of New York City, for appellant.

Frederick P. Fish, of Boston, Mass., W. Clyde Jones and Arthur B. Seibold, both of Chicago, Ill., and Everett N. Curtis, of Boston, Mass., for appellee.

Before WARD, ROGERS, and HOUGH, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). [1] Doubtless plaintiff's product succeeds, in part at least, because it deserves the name "midget" or "dwarf" as compared with its obsolete predecessors; but it is not patentable because it is small, nor did the patentee make any such suggestion. "Midget" is a catchword, good for trade, but not affecting any legal inquiry. There has been too

much expenditure of language over the excellences thought to be suggested by its use and iteration.

[2] Appellant has furnished photographs of plaintiff's and defendant's "bases"; i. e., the completely assembled plugs, with "removable" and "independently rotatable" sleeves removed. They are reproduced below.[1]

Benjamin  Best

 

Here are seen the end contacts, and the binding post for the "outer contact" which is the sleeve. The electrical identity of the plugs is, we think, plain on sight.

Mechanically the "rotatable threaded sleeve having a handhold," which is also common to both devices, is applied in quite different ways, said to entail important consequences. In Benjamin the striated surface of the lower end as shown (through which the insulated wires run) unscrews, permitting the sleeve to be slipped on over the insulated base proper, where it is held by and between a collar abutting against the shoulder of the base as shown, and the end or "bushing," after it is screwed on again. Then the plug is ready to be screwed into the socket; the revoluble threaded sleeve entering and filling the same, so that substantially nothing but the "bushing" shows when the plug is screwed home and the end contact is effected. It is, we think, plain that, by the rotatable sleeve with handhold, the object of not twisting wires is attained; and by the arrangement of parts protected by the sleeve when in use, yet easily gotten at, "ready access to the binding parts" is afforded. Of course, the assembled plug is made of many separate pieces of porcelain, metal, and fiber; but it may fairly be said to dissect into three parts for purposes of inspection and repair—the base, bushing, and sleeve.

In Best, the plug as shown dismembers very differently; it is the end contact screw that (in a sense) holds the sleeve on and the whole apparatus together. If that be removed, the base insulation comes out or off; the terminals being affixed to what looks like the bushing

---

[1] Benjamin v. Best, from page 2 of defendant appellant's charts.

of Benjamin. The rotatable sleeve is then slipped over the terminals, the insulation fitted over them and into the sleeve, and the whole bolted together by the reinserted end contact screw. Thus defendant's device separates into four pieces, which counsel denominate butt, tip, sleeve, and contact screw.

Although invention in some minor degree at all events is not denied by defendants, it remains true that the questions presented cannot be resolved without defining with some accuracy certain words as used in specification, claim, and argument, for thereby the nature and meaning of the patent is both ascertained and stated.

"Base" is of these words the most important, and we agree with defendant that it has no invariable meaning in mechanics, and that it is used in the specification before us as describing bodies sometimes of one construction and sometimes of another; but we cannot doubt that, as used in claim 3, the word refers, as it does in ordinary talk about lighting plugs, to that cylindrical insulating part which always contains the contacts and keeps them from short circuiting. This claim in words describes "base" no further than to require an exposed end contact and a side recess for a binding post for the side (sleeve) conductor. It is almost common knowledge that such an insulating base must, to keep wires in position, have shop-fitted to it other parts —adjuncts— and all together are spoken of as the base; i. e., that to or in which the lighting or power device is affixed, and into which the current wires extend. Defendants have themselves used the word in that sense in describing the photographs above reproduced, which show the "bases" of both plugs; i. e., the insulating base and its adjuncts, ready for the rotatable contact shell or sleeve.

"Bushing" as used in the specification, is so called because through its perforated center run the insulated wires. We see no reason why, for the same reason, the lower part (as shown) of the Best plug could not be called by the same name.

"Butt" or "tip," applied to Best as dissected, are words of experts' coinage, and fully describe the two main parts into which the base of that plug is separable; but the making of the words does not seem important.

Assuming the foregoing meanings for the words enumerated, it is thought plain that both the claims quoted read directly upon the Best plug, and so will all the others in suit. While this suggests, it does not prove, infringement; and it remains to ascertain what (in the light of prior art) Benjamin disclosed that was new, and whether Best has only assembled what was old.

That a swivel attachment, for anything that has two wires dangling from it, is desirable, seems so plain that it is with some surprise that but three prior patents [2] are found to have instructed in that particular, and it is admitted that none of them ever produced a commercial embodiment of disclosure. All three reveal the rotatable and detachable sleeve, but none attempts even to put, with usual insulation, the bind-

[2] McGlone, 631,173, Quinn, 670,376, and Van Aller, 740,952—the latest issuing in 1903.

ing posts inside that sleeve. Quinn does put them there, but with no insulation except air. It would be unprofitable to do more than state our conclusions on these three patents. Quinn is proved utterly unpractical, if not inoperative. The others fairly enough represent on paper exactly what Benjamin drove from the market; i. e., a plug with the electrical joints or fitting places in a housing exterior to what went into the socket—heavy, unsightly, and necessarily expensive.

Two other patentees [3] had in solid plugs taught the possibility of wholly or partly putting binding posts and adjuncts within the area bounded by the screw thread fitting the socket, and Bown at least had done so to diminish size; therefore it is claimed (in substance) not that it lacked invention to combine the suggestions in a particular form of matter, but that any departure from the specific form disclosed must be, even if not obviously identical with prior art, noninfringement nevertheless, because Benjamin disclosed nothing including or underlying what Best has done. Chicago, etc., Ry. v. Sayles, 97 U. S. 554, 24 L. Ed. 1053. Again, we need but state results of evidence in respect of these solid plug patents. Bown's methods of stowing or disposing binding posts and wire within his shell were wholly incompatible with a rotatable sleeve, and Fielding, when put to the test of practice, was unworkable, except under license from Benjamin. Thus we arrive at the usual inquiry: Is the form or substance, or both, of the patented device, copied?

If Benjamin had disclosed only the "preferred unitary base" sufficiently shown in the photograph above, and which is his commercial embodiment of invention, we think form would have been successfully avoided by Best; but as an alternative embodiment the patentee discloses a structure in which the tip or insulating end of plug is separable, so that it disassembles substantially as does defendant's. The substance of Benjamin is the real bone of contention. We feel assured from the evidence that he was the first to disclose and describe a structure in which, when the socket was filled, almost no plug showed outside, which could be inserted and removed without twisting wires, and could be examined for defective wire connections without disturbing shop fit or injuring delicate partitions of insulating material. This is a considerable list of achievements, and needs no dwelling on such words as "dwarf" or "midget," for all these words mean, when considering function, is that the standard socket is a small hole; if by agreement sockets became a foot in diameter, both the styles of plug before us could operate in the same way, and the question of infringement would be the same.

Even when dealing with substance, definition of words is important. Admittedly each plug has "two body portions"—(claim 25) in Benjamin, "base and bushing"; in Best, "tip and butt." Each has a handhold; the former on bushing, the latter on butt. Therefore it is insisted that, because Best's terminals are affixed to the butt that has the handhold, there is a substantial difference to Benjamin, all of whose

[3] Fielding, 752,833, and Bown, 837,182.

"electrical conducting parts" are carried by the "body portion," that has no handhold.   This argument identifies affixing and carrying. The meaning cannot be so summarily limited; the word "carry" is too general, and in accurate speech its meaning is often plastic, even after modification by the words "in," "on," "with," "through," etc.   If Best's terminals, as carried by or on his butt, were alone inserted in the socket, the device would not be as good as Quinn's air insulation; and when those terminals are fitted into the insulation and fastened by the end contact screw, it is both good English, and necessary electrical engineering, to say (as plaintiff contends) that Best's "electrical conducting parts" are carried "in" the tip, or what in both plugs performs the essential insulating function of a base.

It is of course true that this view of the patent, the thing made under it and that said to infringe, regards the device of each party as a functioning entity, as an organization, and refuses to think important differences in structural parts, which are only useful in their totality.   This was done also below, and is much complained of as a denial of defendant's right to have his device "compared with the terms of the claims" in suit.   We perceive no force in the contention; it has been shown that (e. g.) claim 3 reads directly on Best, and, when the organization or functional relation of the components of both devices are studied, that (e. g.) claim 25 also so reads.   We know of no proper way to study either an alleged invention or the claims defining it, other than to consider its organization, to regard it as the sum of all its parts, and extract meaning from words of definition accordingly.

The insistence, just noticed, upon differences in construction, not affecting organization or functional result of the completed whole, is, we think, but one way of presenting the crux of this cause; i. e., was the invention of Benjamin anything more than neatly arranging, with attractive compactness, a number of old parts which, when assembled, did exactly what they had been doing for about a generation?   This method of statement dwells on the invention as the attempted solution of an electrical problem, whereas the difficulties were mainly mechanical.   It is proven that what gave Benjamin success was the form of his insulation, at once effective, compact, and strong, yet capable of inexpensive production by porcelain makers.   That Bown and Fielding failed in, and Quinn sought to evade by leaving it out, while McGlone and Van Aller did not touch the matter; they left it (so to speak) outside in the housing that long made swivel plugs unattractive.   Benjamin made a change in the elements of an existing structure, and thereby corrected an existing difficulty; i. e., he completely reorganized that part of a plug carrying the contacts in or on itself, by juxtaposing the binding posts.   The means for introducing that novelty were perhaps per se neither new or patentable, but the resulting structure was an excellent invention.   Miehle, etc., Co. v. Whitlock, etc., Co., 223 Fed. at 650, 139 C. C. A. 201.

[3]  Inasmuch, however, as the problem and its solution, in a mechanical sense and to those who look backward, seem very simple, while

electrically there is no novelty at all, we consider it appropriate to invoke commercial success as evidence of invention, and a reason for broad construction of claims, if that be necessary.

No instance is at present remembered of a more marked or rapid success achieved by a patented article which, to get a market, had to displace existing appliances made by skilled and powerful manufacturers. This is a feat very different from inducing the public to form a new habit, due quite as much to plausible advertising as intrinsic merit, or from obtaining a species of success for a patented adjunct to an existing and meritorious article. Locklin v. Buck, 159 Fed. at 436, 86 C. C. A. 414.

Prompt and extensive use plus displacement of earlier devices is "of itself" persuasive evidence of invention (Minerals Separation v. Hyde, 242 U. S. at 270, 37 Sup. Ct. 82, 61 L. Ed. 286), a form of statement stronger, we think, than has before fallen from that court on this subject.

[4] By admitting some measure of invention, the present defendants seek to avoid or minimize the force of the foregoing; but as said in Boston Woven Hose Co. v. Penna., etc., Co., 164 Fed. 557, 90 C. C. A. 84, acquiescence not only assists in finding invention, but justifies breadth of construction of the patent itself. And to the same effect is our decision in O'Rourke, etc., Co. v. McMullen, 160 Fed. at 933, 88 C. C. A. 115.

We have not doubted invention, but its value is greatly enhanced by proof of public acquiescence. The defendant's device is literally within the claims in suit; it is substantially within Benjamin's achievement, unless the claims are narrowly construed. Being convinced by the evidence that such construction would be unwarranted, the decree below is affirmed, with costs.