STANLEY WORKS v. TWISTED WIRE & STEEL CO.

(Circuit Court of Appeals, Second Circuit. January 15, 1919.)

No. 126.

1. PATENTS ⬅⟹328—VALIDITY AND INFRINGEMENT—BOX STRAPPING.
   The Howe reissue patent, No. 13,765 (original No. 1,043,771), for box strapping, is not invalid, as containing new matter, was not anticipated, and discloses invention, evidenced in part by its great commercial success in an old art; also *held* infringed.

2. TRADE-MARKS AND TRADE-NAMES ⬅⟹75—UNFAIR COMPETITION.
   Evidence, which does not show that the public was deceived by believing defendant's product to be that of complainant, does not warrant a finding of unfair competition.

3. WORDS AND PHRASES—"BOX STRAPPING."
   "Box strapping," used by manufacturers and merchants, consists of metal strips intended to reinforce the ends of heavy wooden packing cases to prevent them from breaking open.

Appeal from the District Court of the United States for the Southern District of New York.

Suit in equity by the Stanley Works against the Twisted Wire & Steel Company. Decree for plaintiff, sustaining the charge of infringement of patent and denying the relief for unfair competition. Both plaintiff and defendant appeal. Affirmed.

Mitchell & Allyn, of New York City (Robert C. Mitchell and Louis W. Southgate, both of New York City, of counsel), for plaintiff.

Charles G. Hensley, of New York City, for defendant.

Before ROGERS and MANTON, Circuit Judges, and AUGUSTUS N. HAND, District Judge.

MANTON, Circuit Judge. Since both parties appeal from the decree entered herein, we shall refer to the parties as they were referred to in the district court, to wit, plaintiff and defendant.

[1] The plaintiff in this bill in equity charged infringement of re-

issue letters patent granted to it July 7, 1914, No. 13,765, for an improvement in box strapping invented by Leon S. Howe. The bill further charged unfair competition. The District Judge sustained the patent, held that there was infringement, and dismissed the charge of unfair competition. The defendant denied that there was invention or infringement, but says that the patent in suit is invalid, because it claims, not a patentable combination, but a mere aggregation of old elements. It further claims that the reissue patent is invalid because it shows new matter. The defendant further contends that the District Judge correctly held that there was no unfair competition in the trade by it.

[3] Box strapping, used by manufacturers and merchants, consists of metal strips intended to reinforce the ends of heavy wooden packing cases, to prevent them from breaking open. Ordinarily, these strips are nailed around each end of the packing case, and made to tightly embrace the case, so as to perform the intended function. As packages are frequently pushed and hauled over and about the floors of warehouses, railroad cars, or on the decks of ships, it is essential that the sharp edges of the strapping, and the nails which are used to hold it, be so guarded and protected as to avoid their catching in the floor, and thus prevent the strapping being torn from the case.

The patent in suit is intended to give practical effect to the idea that, by producing a strapping which could be applied by nails driven obliquely therethrough, the oblique driving of each successive nail would take up the slack between it and the last driven, and that such accumulative tightening would cause the strapping to hug tightly to the box, thereby avoiding the danger of the box breaking open. The inventor arranged to corrugate the median portion of the strap transversely, so as to form a central web portion having alternate ridges and furrows, the latter forming effective nail-receiving pockets, and the former constituting effective nail-holder shoulders or abutments; the idea being that a nail held obliquely could be safely driven without danger of glancing, the puncturing blows being utilized to take up the slack. The effect of corrugating the median portion is to increase the overall thickness of the web portion, so that, to the extent the overall thickness is increased, so also would the depth of the pockets and the height of the nail-holding ridges or abutments be increased, without respect to the actual thickness of the metal employed. The corrugation of the metal maintains the initial thickness, and thus affords a sufficient resistance to puncture by the nail to enable the blows to perform the slack taking-up function before the strap is actually punctured, and it is claimed that by reason thereof comparatively thin sheet metal can be used for relatively wide strapping. By driving the nail obliquely, it enters the wood obliquely, and it is claimed that this, so driven, will continue further to take up the slack, insuring that the strapping will be caused to hug snugly upon the box. The side border of the strapping is left uncorrugated transversely, and thus avoids the danger of the sudden taking up of the slack, which would be caused by the stretch of the strapping longitudinally, and thus defeat the whole purpose of the invention. The transversely corrugated central web,

with its uncorrugated and nonstretchable borders, comprise the central idea of the invention. The furrows thus formed and the raised bearings guard and protect against the nail heads striking the floor when they are driven fully down.

The plaintiff in his claims sets forth:

4. A metallic box strap for packing cases and the like, comprising a strip, transverse corrugations formed along the median portion thereof to produce substantially roughened surfaces on each face of the strip, and to increase the overall thickness thereof along said median portion, the shoulders formed thereby being arranged to hold the point of a nail to prevent slippage thereof, whereby said nail may be driven at an angle relatively to said strip, to take up slack therein in the act of applying the same; that part of the strip at opposite edges of said corrugated portion being relatively smooth to prevent stretching the central corrugated portion of said strip.

5. A metallic box strap for packing cases and the like, comprising a strip, transverse corrugations formed along the median portion thereof to produce substantially roughened surfaces on each face of the strip, and to increase the overall thickness thereof along said median portion, the shoulders formed by said corrugations being arranged to hold the point of a nail to prevent slippage thereof, whereby said nail may be driven at an angle relatively to said strip to take up slack therein in the act of supplying the same; that part of the strip at the opposite edges of said corrugated portion being relatively smooth and provided with raised bearings.

7. A metallic box strap for packing cases and the like, comprising a strip, transverse corrugations formed along the median portion thereof to produce substantially roughened surfaces on each face of the strip, and to increase the overall thickness thereof along said median portion, the shoulders formed by said corrugations being arranged to hold the point of a nail to prevent slippage thereof, whereby said nail may be driven at an angle relatively to said strip to take up slack therein in the act of applying the same; that part of the strip at the opposite edges of said corrugated portion being relatively smooth and provided with raised bearings, said bearings being sufficiently raised to extend above the adjacent corrugated median portion of the strip sufficiently to guard the head of a nail driven through said median portion.

Howe's application was filed and the reissue patent granted before the acts of infringement began. The defendant does not charge the plaintiff with laches, and an examination of the application and the specifications, together with the claims of the reissue patent indicates that the patentee has been more definite in the reissue patent than what was disclosed by him in the original patent. The drawings are the same, except that in Figure 2 the transverse corrugations are illustrated definitely, instead of conventionally, as in the original patent. The object of permitting a reissue to be granted was intended to make the patent more specific, providing no new matter was introduced. There was no new matter introduced in the reissue patent; the original patent embodying a rather full disclosure of the basic idea of this invention, namely, the transversely corrugated median portion or web, plus the nonstretchable borders. Box strapping seems to have been old in the art, and when the plaintiff entered the field, in order to meet with success, it was obliged to show trade advantages over the prior forms. For instance, box strapping with raised bearings on one surface formed by embossment one way, was old; the bearings being provided for the sole purpose of holding the sharp edges of the strapping away from the floor. The idea of providing a means for preventing the point of the nail from glancing out of a vertical position is

old; but this invention provides a construction which makes safe the puncturing of the material by a nail placed obliquely anywhere throughout the length of the strap with hammer blows incidental to puncturing the metal and the subsequent blows incidental to driving the nail into the wood, all operating to take up objectionable slack behind the nail. By transversely corrugating thin metal along the median line, forming relatively deep pockets and correspondingly high abutments, which provide a height even greater than the thickness of the stock, whereby the point of a nail, obliquely held, could be placed practically anywhere throughout the length of the strapping to avoid nails or knots in the packing case, so that, when the nail was struck, it would not glance, but would have the effect of taking up slack before puncture would occur, and later, when the nail was driven in the wood by oblique driving, it tended to further draw the strap taut. In addition thereto, the borders of the strap were not transversely corrugated, but provided a nonstretchable border which, with the driving of the nails, would be drawn taut. The placing of this invention upon the market has resulted in an unusual commercial success, which is now frequently considered as evidence of invention. Washburn, etc., Co. v. Norwood, 143 U. S. 275, 12 Sup. Ct. 443, 36 L. Ed. 154; Benjamin, etc., Co. v. Northwestern, etc., Co., 251 Fed. 288, —— C. C. A .——.

This record shows that, when the plaintiff first engaged in manufacturing this strapping, it was then and prior thereto engaged in manufacturing box strapping in a limited way, using only its byproduct from its rolling mills, or, as the witness Parsons described it, a by-product which it classified as waste. The annual sales of this patented product grew from 22,373,700 feet in 1913, to 100,281,800 feet in 1917. This speaks with great force for its novelty and utility. Barry v. Harpoon Mfg. Co., 209 Fed. 207, 126 C. C. A. 301. This phenomenal success, with the advantages given to merchants and manufacturers who require a metal strapping in their business, leaves no doubt in our mind that invention is clearly shown.

The chief structure of the prior art relied upon by the defendant, is the Bowler strapping, covered by the Bowler patent, No. 458,510. This patent expired in 1896. It provided a central web portion, with closely spaced minute score lines cut into the sheet metal stock, usually in one surface only; the object being to hold the nail from slipping either way. The result of scoring was to weaken the thin sheet metal stock, so that the nail would penetrate more easily than it otherwise would. The corrugating process of the patent in suit is opposed to the scoring or cutting process. Corrugation preserves the initial resistance to puncture the sheet metal, and the blows used in puncturing the metal take up the slack in the strap. The alternate ridges and pockets, with the height and depth respectively obtained, make secure the anchoring of the point of the nail, so that it would not glance when driven obliquely. The exhibits indicate that the ridges and depth of the pockets make the height several times as great as the actual thickness of the material.

In the Bowler patent, while it shows the strapping transversely scored along its middle portion, it contributes no useful function thereto.

Bowler first anchors the strapping with two nails at extended intervals, and provides for intermediate nails between the two anchored points, so that the two side bars of the strapping would be spread apart by the intermediate nails. This is illustrated in the patent drawing of Bowler. The nails in Bowler's are driven vertically, and not obliquely, thus losing the opportunity of taking up slack in the manner intended by the patent in suit. It further appears that the Bowler strapping was used on small boxes, such as orange boxes. On the other hand, the defendants have virtually substituted the Howe strapping, describing it by sample which is marked Exhibit 10, which, as claimed by the plaintiff, is the infringing structure.

The infringement of the patent in suit is plain, and needs no further comment. The abandonment of the manufacture of the Bowler "duplex" strapping and the substitution of this type (Plaintiff's Exhibit 10) makes clear, we think, the claim of infringement.

[2] The District Judge held that there was no proof warranting a finding by him of unfair competition, and that this cause of action is not made out. We are satisfied that the evidence does not warrant a finding that the public has cared anything about the source of plaintiff's goods, or has been deceived by believing that the merchandise of defendant's manufacture is that of the plaintiff. We approve these conclusions. Crescent Tool Co. v. Kilborn & Bishop Co., 247 Fed. 299, 159 C. C. A. 393; Shredded Wheat Co. v. Humphrey Cornell Co., 250 Fed. 960, —— C. C. A. ——.

The decree is in all respects affirmed.