### HARVEY HUBBELL, Inc., v. GENERAL ELECTRIC CO.

### SAME v. BRYANT ELECTRIC CO.

(Circuit Court of Appeals, Second Circuit. May 26, 1920.)

Nos. 220, 221.

1. **Appeal and error ☞1073 (1)—Decree "pro forma" not reversed, if there was genuine decision.**

   The phrase "pro forma," in an appealable decree or judgment, usually means that decision was rendered, not on conviction that it was right, but merely to facilitate further proceedings; but the insertion of the phrase in a decree does not require reversal, where record shows that the decree expressed the result of a consideration of the evidence, so that it was not in fact pro forma.

2. **Patents ☞130—Rebuttable presumption that earlier numbered patent, issued same day, is senior.**

   There is a rebuttable presumption that, of two patents dated the same day, the earlier patent in number is the earlier in publication.

3. **Patents ☞35—Commercial success, due to other causes, not evidence of invention.**

   Commercial success of the patented device, due to a large increase in the demand for the device and to extensive advertising, based largely on claims of excellence not due to the patented invention, is not to be considered as evidence of invention.

4. **Patents ☞226—Infringement implies appropriation of substantially described element.**

   Infringement cannot be found merely from the use of advantages contained in the commercial article, but must be based on the appropriation of something which the claims of the patent specifically describe.

5. **Patents ☞168(2)—Acquiescence in limitation of claims by examiner precludes broad assertion.**

   Where an applicant for a patent acquiesced in the rejection of his broad claims by the examiner, and in claims which covered only his spe-

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

cific construction, he cannot thereafter assert that the claim has a broad application.

**6. Patents ⚖⇒167(1)—Claims not restricted or enlarged by the drawings.**

The description of the invention as contained in the claims cannot be restricted by the drawings, nor, on the other hand, can it be extended to include disclosures by the drawings not contained in the claims.

**7. Patents ⚖⇒328—774,250, claim 1, for electrical appliance plug and cap, held not infringed.**

The Hubbell patent, No. 774,250, claim 1, for electrical appliance plug and cap, as restricted by the applicant to conform to the examiner's objections, *held* not infringed by devices which did not contain independent guide holes leading to the recess.

**8. Patents ⚖⇒259—"Contributory infringement" is intentional aid to infringement.**

Contributory infringement of a patent essentially consists in intentionally giving aid to or intentionally co-operating in an infringement.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Contributory Infringement.]

**9. Patents ⚖⇒255—Claim covering plug and cap not infringed by cap for use with patented plug.**

A claim in a patent for an electrical appliance plug and cap is not infringed by the manufacture of a cap of different design, intended for use with the patented plug.

**10. Patents ⚖⇒226—There is no partial infringement.**

There is no such thing in patent law as partial infringement.

**11. Patents ⚖⇒259—Intent necessary to contributory infringement not proved by compliance with decoy letters.**

The fact that defendant, in compliance with decoy letters written at plaintiff's suggestion, manufactured articles described therein for use with plaintiff's patented articles, does not establish contributory infringement, in the absence of any showing that such practice had ever been followed in any other dealings.

**12. Patents ⚖⇒328—774,251, claims 2–4, 6, for an electric appliance plug and cap, held not infringed.**

The Hubbell patent, No. 774,251, for a plug and cap for electrical appliances, claims 2, 3, 4, and 6, *held* not infringed, when so limited as to be valid in view of the prior art.

Appeal from the District Court of the United States for the Southern District of New York.

Appeal from the District Court of the United States for the District of Connecticut.

Separate suits for infringement of two patents by Harvey Hubbell, Incorporated, against the General Electric Company and against the Bryant Electric Company, respectively. From decrees for plaintiff, defendants appeal. Reversed and remanded, with directions to dismiss the bills.

The General Electric Company appeals from a decree entered in the District Court for the Southern District of New York and the Bryant Electric Company from a similar decree entered in the District Court for the District of Connecticut. Both actions are on the same claims of the same patents viz. Hubbell patent No. 774,250, granted November 8, 1904 (claim 1), and No. 774,251, granted the same day to the same patentee (claims 2, 3, 4, and 6).

These patents (copending in the Office) both relate to "separable attachment plugs." The patent earlier in number (hereafter spoken of as the senior patent) declares as the object of invention to provide a plug "in which

⚖⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

the cost of construction shall be reduced to the minimum, and which shall do away with the possibility of arcing or sparking in making connection, so that electrical power in buildings may be utilized by persons having no electrical knowledge or skill." The specification is almost wholly devoted to describing the parts of the pictured means of producing this desirable result.

The problem in the patentee's mind was to attain safety and strength, accompanied by sufficient accuracy of fitting parts, notwithstanding the fact that all attachment plugs of this general kind must have a porcelain body—something made cheaply and in great quantities, and impossible of procurement "of exactly the same size." The plug of this patent shows (inter alia) comparatively deep recesses in the porcelain body, in the lower part of which are affixed "contact springs," which are U-springs of current carrying metal, which engage with contact posts having reduced necks, which necks snap into the springs, producing electrical connection—an action which takes place some distance below the entrance of the recess containing the spring. The part of the recess not occupied by the contact springs the patentee calls a "guide hole." Electrically there was nothing new about this plug, but the mechanical arrangement thought to be novel is thus defined in the only claim in suit as follows:

"1. A separable attachment plug comprising an insulating body having independent recesses, locking contact springs in said recesses and independent guide holes leading into said recesses, and a cap having contact posts adapted to pass through the guide holes and engage the locking contact springs, the walls of said recesses and guide holes closely surrounding the said contact springs and extending beyond the ends thereof, whereby a connection can be established only upon the passage of the contact posts through the guide holes and into the inner spaces constituting said recesses."

The contact posts of the senior patent as pictured, and not varied by the specification, are cylindrical. The junior patent (774,251) displays what in the main is the same mechanical conception of arrangement, but exhibits the cap as "provided with knife blade contacts which engage the contact plates after they have been passed through the contracted insulating passages." As in the senior patent the knife blade, in making electrical contact, must go through a passage in the porcelain body of the plug before it arrives at the chamber or recess containing the contact springs. As such springs cannot engage a knife blade as they can a post with a reduced neck, a locking spring is provided, engaging with a recess in the blade, which locking spring, however, does not ordinarily carry current.

Again, invention resides entirely in the mechanical arrangement and coordination of parts, and the patentee dwells in his specification on a depression in the base (recess 30), which, when the parts are assembled, serves "to anchor the parts firmly in place and prevents their movement relative to each other," and also upon a single screw, which fastens together the block and base when out of the mass of interchangeable parts a plug has been assembled. These various advantages are sufficiently defined in the following claims in suit:

"2. A separable attachment plug comprising a base provided with insulating chambers and insulating passages leading into said chambers, contact plates and locking springs in said chambers, an end block secured to the base and covering the chambers, and a cap provided with contacts adapted to pass through the insulating passages and engage the contact plates and locking springs in the insulating chambers."

"4. A separable attachment plug comprising a base provided with recesses, 30, insulating chambers and insulating passages leading into said chambers, contact plates in said chambers, an end block engaging the recesses in the base and secured to said base, so as to cover the chambers, and a cap provided with contacts adapted to pass through the insulating passages and engage the contact plates in the insulating chambers."

"6. A separable attachment plug comprising a base provided with insulating chambers and insulating passages leading into said chambers, contact plates in said chambers, an insulating end block which covers the recesses, a

screw passing centrally through the end block and base by which they are secured together and a cap provided, with contacts adapted to pass through the insulating passages and engage the contact plates in the insulating chambers."

For brevity, these claims of the junior patent may be referred to as the "locking spring claims" (Nos. 2 and 3), "recess" claim (No. 4), and the "screw" claim (No. 6).

The original bill against General Electric Company charged infringement of the senior patent and of the screw and recess claims of the junior in respect of one style of plug (Exhibit 10B), which style had long been abandoned and of which very few specimens had been sold. By supplemental pleadings, however, these cases came to present questions at least of commercial importance to the leading manufacturers and distributors in this country of what are generically known as "electrical appliances," because such appliances increasingly consist of a great variety of heating, cooking, and lighting devices electrically and mechanically connected by the union of a cap attached to the device and a plug or body attached more or less permanently to the house or other structure in or through which the circuit current flows. It is matter of common knowledge that such devices of domestic convenience have enormously increased in number and variety during the life of the patents in suit.

We are persuaded that plaintiff has contributed to this business development by its clever business management, economics in manufacture, and skillful, persistent, and widely extended advertisements. We also find that there is no confessed or admitted superiority between the cylindrical or pin contact post and the "knife blade" construction. The latter is certainly cheaper; the former is probably stronger and more enduring. Large manufacturers (such as all the parties to this suit) may make both styles, and by the multiplicity of advertised forms seek to cater to the whims of taste quite as much as to secure mechanical and/or electrical perfection.

The result of the supplemental pleading is that the General Electric Company is charged with infringement of the senior patent and one of the locking spring claims in respect of an article known here as Plaintiff's Exhibit 10C, with infringement of all the claims in suit in respect of Plaintiff's Exhibits 10D and 10F, and with infringement of the senior patent and the locking spring and recess claims by Plaintiff's Exhibit 10E.

The Bryant Company is accused of putting forth 16 different appliances (Plaintiff's Exhibits 4–19), all infringing the senior patent, and all infringing one or the other of the "locking spring" claims. Bryant Company is also charged with contributory infringement by selling certain caps of their own manufacture capable of use with Hubbell plugs. The charge of contributory infringement rests on the following transaction: In 1916, a few weeks before this suit was begun, two concerns at the request of plaintiff sent direct to the manufactory of Bryant Company small orders for what had been advertised as "Spartan plug caps," which orders described the caps as to be "interchangeable" with some Hubbell appliance or appliances. One order was filled with caps having parallel knife blade contacts; the other was for "tandem" contacts, and these Bryant Company did not ordinarily make, but manufactured for this order, and it never made any more.

No Bryant cap carries contacts with recesses suitable for engagement with the Hubbell locking spring. Therefore such caps could be used so as to provide electrical connection when joined to a Hubbell plug, but the only mechanical connection was frictional. For obvious reasons the sale of caps was smaller than that of plugs or bases, and caps and bases severally are articles of commerce. There is no evidence apart from the filling of these two decoy orders; and it is found as a fact that Bryant Company has manufactured caps, not with the intent of having them used with Hubbell plugs, but with the hope that the public would buy the Bryant plug for use with the Bryant cap. When so used a locking contact occurs; that a poor mechanical connection did not prevent electrical use with the Hubbell plug or base was, however, a matter of indifference to Bryant.

These cases were heard by the same trial judge, although in different districts, and were held under consideration for a long time, and until the court became engaged in a jury trial of almost unprecedented length. Finding and announcing that other engagements made it impossible to write a review of the facts, the court in a brief memorandum stated its conclusions on every point involved in either case, and entered decrees accordingly, but (for reasons not appearing of record) inserted the words "pro forma" after the words "Ordered, adjudged, and decreed" in each document.

Both defendants appealed, assigning for error failure to find both invalidity and noninfringement, and on those appeals raise the question as to the effect of the phrase "pro forma" in the decrees as entered.

Frederick P. Fish, Hubert Howson, and Samuel Owen Edmonds, all of New York City, for appellants.

Clifton V. Edwards, of New York City, and W. Clyde Jones, of Chicago, Ill., for appellee.

Before WARD, HOUGH, and MANTON, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). [1] It is assigned for error that the court entered "pro forma" decrees. That Cramp, etc., Co. v. International, etc., Co., 228 U. S. 645, 33 Sup. Ct. 722, 57 L. Ed. 1003, ever requires reversal merely for this reason is not admitted, but need not be decided. The phrase complained of, in an appealable decree or judgment, usually means, and is asserted to mean in the present instance, that decision was rendered, not upon intellectual conviction that the decree was right, but merely to facilitate further proceedings.

But this court is not concluded by a phrase. We may examine the record to discover whether there was a genuine decision, and, having done so, are satisfied that the trial court by these decrees expressed the result of a consideration of the evidence. The decrees are not in fact pro forma, and do not become so by having a label put on them. We therefore consider the merits.

[2] Although the patents in suit issued on the same day to the same man, the senior patent is prior art. By rebuttable presumption the earlier in number of several patents dated alike is earlier in publication (Crown Cork, etc., Co. v. Standard, etc., Co., 136 Fed. 841, 69 C. C. A. 200); but in this case application was made for the junior patent more than a year after that for the senior had been filed, and the former is confessedly for an improvement on the latter. Under such circumstances the art to and including the senior patent is known to the patentee, not only by legal presumption, but by personal study. Writing Machine Co. v. Elliott, etc., Co. (C. C.) 106 Fed. 507; Willcox, etc., Co. v. Merrow, etc., Co., 93 Fed. 206, 35 C. C. A. 269.

[3] Much of plaintiff's case as to range of equivalents, existence of invention, and interpretation of claims rests on commercial success, and we are especially referred, not only to the language, but the facts, of Benjamin, etc., Co. v. Northwestern, etc., Co., 251 Fed. 288, 163 C. C. A. 444. See also Stanley Works v. Twisted Wire Co., 256 Fed. 101, 167 C. C. A. 340. Before success in business becomes available as evidence to aid in proving the fact of invention, or to extend the construction of words, it must be proved to have flowed from the claims in suit. A claim is for means, and those means must be proved to have been the means of success.

Until 1909 the patent of Weston (No. 480,900) was in force, plaintiff was licensed thereunder, and publicly by advertisements claimed (in effect) the advantages of Weston's invention. An examination of this patent (especially claim 1) shows on this record a basic invention, without paying tribute to which we incline to think that few plugs in evidence could have lawfully employed "detachable engagements" making electrical contact. It is quite impossible to say how much of plaintiff's success was due to manufacturing for upwards of five years under Weston's patent.

Further, this record requires mention of the decisions pointing out that commercial success as evidence is to be considered when patentability is doubtful (Locklin v. Buck, 159 Fed. 436, 86 C. C. A. 414); that nothing is more easily suggested by a popular new thing than an endeavor to put "mere novelty in the place of invention" (Robins, etc., Co. v. Link Belt Co., 233 Fed. 1005, 148 C. C. A. 15); and that successful exploitation of a device covered by a patent is often no more than the improvement by advertising and other energetic business methods of a commercial opportunity (National, etc., Co. v. Bissell, etc., Co., 249 Fed. 198, 161 C. C. A. 232).

These considerations have application here: The commercial opportunity is shown to have been afforded by the enormous growth of the electrical appliances for comfort above enumerated, and plaintiff is and has been a most pushful advertiser, setting forth in publications of record plausible reasons for patronage having no reference to whatever invention is defined by the claims in suit. We decline to consider commercial success in respect of either the fact of invention or interpretation of claims.

The accusations of infringement show that the fundamental question here is the scope or breadth of the senior patent. It is urged that plaintiff's plug shows "a combination of elements" functioning "by reason of their co-operation," which elements contained in an insulating body—that is, a single piece of porcelain—are (1) independent recesses functioning to contain and assist the contact springs; (2) locking contact springs, which are merely strips of metal bent into suitable shape and economically stamped out of sheet copper; (3) independent guide holes leading into the recesses and preventing abnormal distortion of contacts, because the walls of the holes sustain all the mechanical strain; and (4) recesses and guide hole walls closely surrounding and extending beyond the end of the contact springs, to the end that (5) the cap may and does carry plain and solid posts, which give good contact, and when of blade shape may also be economically stamped out of metal.

[4] The foregoing summary from a brief is a laudatory dissection of a popular form of plaintiff's device as commercially exploited. It is always a temptation to take a patentee's commercial article and argue that no advantage, shown by experience to reside therein, can be utilized by a competitor under pain of infringement. But legal infringement cannot be so proved; it is necessary to take the alleged infringing article, and show that the maker of that thing has appropriated what the claim substantially describes.

[5] Substantial description is an elastic term, and it may (inter alia) be restricted by prior art, or by limitation arising in the Patent Office. The rule that acquiescence in the rejection of a broad claim, when accompanied by the acceptance of a narrower one, estops the patentee from ever demanding for the claim he got an interpretation that would cover what he was not given (Corbin, etc., Co. v. Eagle, etc., Co., 150 U. S. 38, 14 Sup. Ct. 28, 37 L. Ed. 989), has, we think, never been departed from in this court.

[6] The claim as granted is not restricted merely by a representation in the drawing (Consolidated, etc., Co. v. Metropolitan, etc., Co., 60 Fed. 93, 8 C. C. A. 485); but neither can it be enlarged by such reference. National, etc., Co. v. Roebling's Sons Co., 158 Fed. 101, 85 C. C. A. 567, cites the earlier cases, and the rule has recently been restated in Strause, etc., Co. v. William M. Crane Co., 235 Fed. 128, 148 C. C. A. 620, and Auto Pneumatic, etc., Co. v. Kindler & Collins, 247 Fed. 323, 159 C. C. A. 417, with its appropriate limitations.

[7] It would be wasted time to do more than indicate conclusion with respect to the limitation arising as to the first claim of the senior patent by reason of its Patent Office history. The matter may be summarized thus: The first claim propounded when the application was filed was for a—

"separable attachment plug comprising an insulating body having recesses, locking contact springs in said recesses, and guide holes leading into said recesses and a cap having contact posts adapted to pass through the guide holes and engage the locking contact springs."

This was rejected on Weston, supra, Cunningham, 320,117, and Marshall, 714,928; the gist of objection being that locking springs and recesses were both old, and there was no invention in having two recesses, instead of one, so as to put the springs into separate compartments. The applicant was compelled to redraft the claim, so that it reads as at present, and plainly requires the contact posts to pass through guide holes before engaging the contact locking springs in the recesses. It was this provision of an approach through insulated material that was required by the Office and yielded to by the applicant, and that acquiescence procured the allowance of the patent.

It has not infrequently occurred that, after many contests with examiners, the patentee emerges from the Office with a claim which in the opinion of the courts is as broad, or perhaps broader, than some which were rejected before allowance. If such final claim is deemed to rest fairly on the disclosure, it is no objection to it that the solicitor outflanked the examiner; but that is not the case here. If this patentee had gotten the claim he first propounded, he might have summarized invention in the manner hereinabove set forth; but as the matter stands he cannot claim that anything infringes the claim in suit of the senior patent that has not an independent guide hole leading to a recess.

There is not a single one of the above-enumerated alleged infringing articles of which this is true. It is desirable to have the path of the contact posts predetermined, to get them in line for their contacts and secure alignment by insulated material, before the cap is shoved home.

If alignment is attained some distance from the point of contact, the careless or inexperienced handler is probably saved from an electric shock. Such alignment is attained by both defendants by squaring their contact posts with a central block of insulation. They have no guide holes, and in some of the forms complained of the distance from the point of electrical contact to the end of the block of central insulation is so slight that it is doubtful whether defendant's devices possess the advantage, the means for attaining which was the one thing that gave Mr. Hubbell his patent.

It follows that there is no infringement of claim 1 of the senior patent, and it becomes unnecessary to determine whether that claim is invalid, if confined, as it must be, to the exact device described and depicted. There was small room for invention left when the application was filed, and the life of the patent is now nearly spent; "concealed contacts" has been a commercial catchword used by plaintiff to advance the sale of its patented article, and it is adopting the style of interpretation urged by the plaintiff here to say, what is admitted by the patentee himself, that defendants have no concealed contacts, but do have "wide-open contacts."

In considering the question of contributory infringement, validity may be assumed for argument's sake, as to all the claims in suit.

[8] Contributory infringement essentially consists in intentionally giving aid to, or intentionally co-operating in, an infringement. In this instance the assertion is in substance that any cap that would "work" with Hubbell's patented combination plug (including the cap) became an infringement of patent rights the moment it was put in place; wherefore, since Bryant Company was told in substance that the decoy letter writer wished to use a Bryant cap with a Hubbell base, the defendants aided such imaginary purchaser to commit an infringement.

[9] Whether, in the absence of any other evidence tending to establish that tort which is infringement, the matter is not too trivial for serious consideration may be suggested, but is not made the basis of decision. Plaintiff, however, cannot prevail for two reasons: First. It is not true that any claim in suit covers the combination of any and every cap just good enough for electrical connection with Hubbell's base plug. There is nothing in any of the patents preventing the use of a frictionally engaging cap with Hubbell's base or any other base. Second. By construction so necessary as to require no explanation the combination of Hubbell is only effected when Hubbell's contact blades are engaged with Hubbell's contact and locking springs.

[10, 11] The allegation of contributory infringement cannot be supported, there having been no possibility of complete infringement within the cases cited in Walker (5th Ed.) § 407, and there is no such thing as partial infringement; nor is the intent requisite under Leeds & Catlin Co. v. Victor, etc., Co., 154 Fed. 58, 83 C. C. A. 170, 23 L. R. A. (N. S.) 1027, affirmed 213 U. S. 325, 29 Sup. Ct. 503, 53 L. Ed. 816, proved by the decoy transactions. So far as intent goes, that trick is completely offset by the whole course of business as testified to without contradiction.

[12] Discussion of the remainder of the case may be brief, after the foregoing statement of our views on the senior patent.

There was no novelty per se in the use of knife blade contacts. They had been commercially used in the Ft. Wayne-Jenney construction, and known at least since 1886. Nor was there inventive thought in securing a locking, as distinct from a frictional, engagement between contact post and current carrying spring. That was old, and is found in the senior patent, if nowhere else. The field of invention left open and occupied by Hubbell was to secure a notched or recessed blade by a supplementary spring, and this he did. That is the only idea validating the locking spring claims, and defendants do not employ that means. If the claims were read so as to cover, they would be void on the prior art.

The recess and screw claims, in so far as they advance those elements as presenting patentable novelty in attachment plugs, are void. As was candidly stated by plaintiff's expert, if anything is composed of two parts intended to be fastened together, it was common practice to prevent relative rotation by "making one end square to fit into a square hole, or some such expedient." That is what plaintiff does with its "base" and "end block."

As for the "screw passing centrally" through the parts just mentioned, the method is shown to be nearly as old as electric plugs, and could doubtless be traced through many arts dealing with small articles assembled as needed from standardized parts manufactured in quantity. It is plainly within the competence of any good mechanic.

If, however, these claims be viewed as presenting the same combination as the senior patent and the locking spring claims, with recess and screw additions, they may stand; but the additions are worthless. No one infringes merely by using recesses and central screws.

Let each decree appealed from be reversed, with the costs of this court, and the causes remanded, with directions to dismiss the bills because of noninfringement, with the costs of the District Court.