## WESSON et al. v. GALEF et al.

### (District Court, S. D. New York. March 27, 1922.)

1. **Injunction ⊂⇒94—Parties entitled to recover for tort can enjoin threatened tort.**

   If the plaintiffs had a right to sue at law for damages resulting from a tort, they have a right to come into equity for an injunction to restrain a threatened tort.

2. **Partnership ⊂⇒199—Individual partners holding title to property can sue alone protected.**

   Where one or more partners hold the legal title of the partnership property by specific conveyances to themselves, either from the other partners or by original deed, they may sue for torts against the property, or even on contracts without joining the rest of the partners, notwithstanding the rule that it is normally necessary for all partners to sue, even on a tort, so that trust certificate holders need not join as plaintiffs, even if they are partners.

3. **Judgment ⊂⇒679—Parties ⊂⇒7(1)—Owner of legal title is only necessary party to suit to protect legal title.**

   Where the right sued on is legal, the holder of the legal title is the only necessary plaintiff, since no one can sue afterwards, and the defendant is protected by the judgment or decree, which is the only concern he can have.

4. **Trade-marks and trade-names and unfair competition ⊂⇒70(1)—Relief against unfair competition depends on balance of rights.**

   Though manufacturers may have no absolute right to prevent others from using a given combination of elements or the specific elements, they may have a conditional right against the use of the combination in unfair competition, when the damage arising from it is substantial, and there are substitute combinations open to the defendant, whose difference is in substance merely trivial: such cases are always compromises between two rights, one of which must yield.

5. **Trade-marks and trade-names and unfair competition ⊂⇒69—Evidence held to show intentional imitation of plaintiff's revolvers.**

   In a suit to restrain unfair competition by imitating plaintiff's revolvers proof that defendants copied the characteristic features of the design and structure of plaintiff's revolvers and placed their distinguishing marks in an inconspicuous position, *held* to show an intentional imitation, which could be restrained.

6. **Trade-marks and trade-names and unfair competition ⊂⇒86—Laches short of abandonment is no defense against final injunction, but may prevent temporary injunction.**

   Laches, short of abandonment, is no defense to a final injunction to restrain unfair competition, but it may be sufficient to prevent preliminary injunction.

7. **Trade-marks and trade-names and unfair competition ⊂⇒86—Delay of two years held not to bar temporary injunction.**

   A delay of two years in bringing a suit to restrain unfair competition after plaintiffs had learned defendants were selling an article imitating plaintiffs', but during which defendants' sales were not large, is not such laches as bars a temporary injunction in a suit instituted as soon as plaintiffs found the infringements were affecting their business.

8. **Trade-marks and trade-names and unfair competition ⊂⇒84—Right to avoid injunction by ceasing to infringe requires showing defendant has wholly abandoned the business.**

   The right of a defendant to avoid an injunction against unfair competition because he has ceased to infringe plaintiff's article is always conditioned on his showing affirmatively that he has wholly abandoned the

⊂⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

business, and even then courts have also often issued the writ on the ground it could not harm defendant and might protect the plaintiff, so that a mere assertion defendant had sold out his business, without a showing he is in no capacity connected with the vendee, is insufficient.

In Equity. Suits by Harold Wesson and others against J. L. Galef, Aaron Newmark, and Emil Edward Gluck. Motions to dismiss the bills denied, and temporary injunction ordered.

Odin Roberts and Charles D. Woodberry, both of Boston, Mass., for plaintiffs.

Henry S. Miller, of New York City, for defendants Newmark, Foreign Manufacturers' Sales Corporation, and Gluck.

R. S. Allyn, of New York City, for defendant Galef.

LEARNED HAND, District Judge. I shall first consider the motion to dismiss the bills, which rests upon the assumption that the "trust" is a partnership and that all the certificate holders are partners. If so, then, the argument proceeds, there is a nonjoinder of parties plaintiff which may be raised in limine, and which will compel an amendment. The plaintiffs retort that in fact all the certificate holders are citizens of Massachusetts and Connecticut, so that this court would still have jurisdiction. However, that would not dispose of the objection, though, if it be true, it would reduce its importance merely to an annoyance to the plaintiffs. But the point is not a good one anyway, granting all that the defendants claim. I shall not, therefore, concern myself with the question of Massachusetts law, whether or not this particular "trust" constitute a partnership among all the certificate holders; it is enough that these plaintiffs are the owners at law of all the property of the trust, real and personal, including the business as a whole, the universitas, whose continued injury this suit is brought to enjoin.

[1, 2] The suit comes into equity because of a threatened tort; it therefore depends altogether on legal rights and legal wrong. If the plaintiffs had a right to sue at law for damages, they have the right to sue in equity for an injunction. The remedy is concurrent and the right no creation of equity itself. Partners are, it is true, joint tenants of the partnership property, and as such it would normally be necessary for all to sue, even upon a tort (Addison v. Overend, 6 T. R. 677), though the point is good only in abatement. Yet if one or more partners hold the legal title, by specific conveyance to themselves by the others, and a fortiori, if by original deed, they may sue for torts against it or even on contracts without joining the rest. Trott v. Irish, 1 Allen (Mass.) 481; Knowles v. Sullivan, 182 Mass. 318, 65 N. E. 389; Railsback v. Lovejoy, 116 Ill. 442, 6 N. E. 504; Burnham v. Whittier, 5 N. H. 334; Agacie v. Forbes, 14 Moore's P. C. 160. In Miss., etc., Co. v. Ward, 2 Black, 485, 17 L. Ed. 311, a single co-owner, apparently a partner, was allowed to enjoin a nuisance. Perhaps that case must stand upon the theory that any person aggrieved may be substituted in place of the public prosecutor, regardless of his title. Yet it would appear that the reason of the rule—i. e., to avoid a multiplicity

of suits by several co-owners—would apply even there. However, in Hutchinson v. Dubois, 45 Mich. 143, 7 N. W. 714, a great court allowed a single partner to sue in replevin without proof of entire ownership.

[3] It is in any event apparent that, where the right sued upon is legal, the holder of the entire legal title is the only necessary plaintiff. Since no one else can sue afterwards the defendant is protected by the judgment or decree, and that is the only concern which he can have. This is indeed the reason why the point is never good, except in abatement. In the case at bar the whole title to the "business" was conveyed to these plaintiffs on January 27, 1912, and if the other certificate holders are liable for debts as partners, they are not on that account at law joint owners, though they are in equity, whatever be the character of the "trust." The motion to dismiss is denied.

The case is therefore open for a decision on the motion for preliminary injunction. It is scarcely necessary here to go over the decisions in the Circuit Court of Appeals for the Second Circuit from the Coffee Mill Case (Enterprise v. Landers, 131 Fed. 240, 65 C. C. A. 587), through the Yale Lock (Yale & Towne v. Adler, 154 Fed. 37, 83 C. C. A. 149), the Searchlight (Rushmore v. Manhattan, 163 Fed. 939, 90 C. C. A. 299, 19 L. R. A. [N. S.] 269), the Crescent Wrench (Crescent, etc., Co. v. Kilborn & Bishop, 247 Fed. 299, 159 C. C. A. 393, 8 Trade-Mark Rep. 177), and the Wheat Biscuit Cases (Shredded Wheat Co. v. Humphrey Cornell Co., 250 Fed. 960, 163 C. C. A. 210, 7 Trade-Mark Rep. 229), to Stanley Works v. Twisted Wire & Steel Co., 256 Fed. 98, 167 C. C. A. 340, which is the last to which I am referred.

[4] It is true that the plaintiffs have no absolute right to prevent the defendants from using a given combination of elements in the make-up of their revolvers provided, as here, that they have no monopoly in the use of any one of them. The defendants' right extends as much to what are called "nonfunctional" elements as to functional. The case as to such features is no different from descriptive words of common use, which have got a secondary meaning. They are generally open to everybody in all combinations. But, though the plaintiffs have no such absolute right, not even to a combination of elements, let alone to the elements in detail, they may have a conditional right against a combination, when the damage arising from it is substantial, and when there are substitute combinations open to the defendants whose difference is in substance merely trivial. Such cases are therefore always compromises between two rights, one of which must yield. We usually confine relief to "nonfunctional" elements, because the defendant will suffer nothing by abandoning them; but it does not inevitably follow that only these may be included. If the function be trivial, possibly these are cases where it might have to yield to a predominant injury which its continuance might inflict upon the plaintiffs.

[5] The case made on the papers is ample proof that the ensemble of the plaintiffs' revolver has come to mean the plaintiffs' manufac-

ture, nor is that in the least affected, because the plaintiff makes and has made others, which have not the especial marks on which it now relies. The swivel model of Smith & Wesson no less means the product of that old and well-known firm, because it also makes "breakdown" revolvers in large quantity, or because in the past it has had other models, or even different details in this model. Though a man may make several kinds of goods, each may still become known as his, and when you copy any one down to the least detail, measure for measure, you may as much represent that your goods are his as though he made only one. While in such cases the protection is narrow, for that very reason the mark of ownership may be picked up from a combination of elements, all old and none sufficient, if taken alone.

There appears to me not the slightest question that all the infringing revolvers were deliberately made for the purpose of imitating a model of the plaintiffs.' In the case of Galef and Newmark they correspond in dimension even by gauge, a coincidence wholly impossible in the absence of conscious imitation. In the case of Gluck, the visual similarity is as complete. Such things do not happen because manufacturers are merely following old patents.

Little identical features in the two lay the matter beyond doubt, if doubt could remain. For example, in all the revolvers the manufacturers have added a circle to indicate a center bushing for the firing pin, which does not exist, a conclusive evidence of intention, at least, to cheat the buyer. Again, the squaring of the barrel at the frame end is totally unnecessary or useless, despite the defendants' insistence to the contrary. The barrel, if continued cylindrical as in the Colt, would not interfere with the ejector pin; and, if it did, there was no need to do more than grind off a segment. To give it the shape which it actually has was certainly not necessary. In section it is not circular at all, not even circular with a segment missing. The stop on the left to hold the chamber when it is swung, out of position has been copied in shape literally, and no explanation is suggested for it, as none can be. The lettering along the top of the barrel, except in the case of Exhibit No. 1 in Newmark's Case, is either a plain fraud—e. g., in Galef's revolvers—or merely fatuous nonsense. That upon the side of the barrel is but little better, and serves no real purpose. To copy the profile of the front end of the frame was equally unnecessary. Why combine the Smith & Wesson ejector pin with this profile? Why not combine the Colt profile with the Smith & Wesson pin? Any saving in metal is trifling.

There are other details for whose imitation more excuse can be made. The mottling of the hammer and trigger may have made these parts interchangeable for nickel and blue finish revolvers, as suggested; but the excuse is not very convincing. Such slight value as it may have is much more than offset by the addition which it gives to the simulation between the two articles. The same applies to the hollow rivets for the firing pin, though here, perhaps, with less force. In each case there were substitutes so nearly interchangeable that the choice actually made could scarcely have been dictated by any other than a wish to make the

revolvers look as nearly as possible like the plaintiffs'. As to the thumb latch, there is also some question. I should not say that the defendants must make an inconvenient latch, yet there were other forms of latch which would answer quite as well, and which would serve to distinguish. This is an especially prominent feature of the plaintiffs' make-up, and its imitation, quite slavishly in some of the infringements, was unnecessary, and made with an obvious purpose. The rear sight I cannot class with the rest; that was useful and better than the Colt. At least one might think so. There was no reasonable modification open to a user which would leave it functionally operative.

The combination of all these features being, as I have said, an unescapable evidence of purpose to imitate, the only conclusion I can come to is that that purpose was in turn actuated by a desire to sell the Spanish revolver as a Smith & Wesson. What precautions did the makers take to avoid this result? They added their names, their trademarks, their monograms on the scutcheon, and, as the law required, the place of manufacture, Spain. On these, as is customary, they rely to escape the inference to be drawn from their imitation. All these are either placed in so inconspicuous positions as not to attract the eye, or, as in the case of the scutcheon and the trade-mark, are so little distinguishable from the plaintiffs' similar marks as to be of very little service, if any whatever. They will distinguish, when once attention is called to them; but they will not draw attention by themselves. Indeed, they are so placed as not to draw attention. The scutcheon may not of itself be an added imitation; that would be hard to say, in view of a similar element in the Colt; but it surely is a delusive guide for distinguishing the counterfeit. Even in Exhibit No. 1 in Newmark's Case, while the name is printed legibly enough along the top of the barrel, the legend might not catch the eye. It is the honestest effort of all to mark the goods truly, but it does not seem to me to outweigh the deceptive combination.

The defendants argue that revolvers are expensive articles, and that men buy them only after examination. That is undoubtedly true in many instances, and it is never the hope of simulators to do more than catch the unwary. Since I am satisfied that the makers of these revolvers tried to do so, I do not see that I need weigh too nicely the probabilities of their success. We are accustomed to speak of a deliberate imitation of this sort as a fraud, and indeed the earlier cases thought fraud an essential of the case. Whatever other legal result fraud may have, at least it relieves the injured party from the need of showing that the imitator was successful. He may take him at his own belief, and assume that, if he thought some buyers would be careless enough not to notice the distinguishing marks, he was right.

In Gluck's and Newmark's Cases the conclusion of a deliberate purpose to pass off is corroborated by actual instances. True, there is a dispute of fact whether the explanatory letter was in fact sent. If the injunction depended upon that issue alone, perhaps the plaintiffs could not win; but it is surely not without weight that that very thing should apparently have happened which the simulation of the manu-

facturers clearly intended to happen. In Galef's Case there was no opportunity for such proof; he deals with retailers, and, of course, they know what they are buying. But the Gorman transaction shows that it is not difficult for others to receive what they do not intend to get, and that Galef may be the first link in a chain of substitution which will prove injurious to the plaintiffs.

[6] The defense of laches applies only to Galef's claim. The plaintiffs did know of his sale of these revolvers in January, 1920, and waited two years before acting. Meanwhile he says that he has spent substantial amounts in advertising. But the sales at that time were not large, and the plaintiffs appear to have acted as soon as they found the infringements were affecting their business. While laches short of abandonment is no defense to a final injunction in such cases (Menendez v. Holt, 128 U. S. 514, 9 Sup. Ct. 143, 32 L. Ed. 526), it has at times been regarded as enough to prevent a preliminary injunction. Thus, in Estes v. Worthington (C. C.) 22 Fed. 822, Judge Wallace refused the writ after a delay of 8 or 9 years; in Von Mumm v. Steinmetz (C. C.) 137 Fed. 168, Judge Lacombe after a delay of "many years"; and in Havana Commercial Co. v. Nichols (C. C.) 155 Fed. 302, after 19 years. The Circuit Court of Appeals for the Second Circuit denied preliminary relief after a delay of 10 years in E. & J. Burke v. Bishop, 144 Fed. 838, 75 C. C. A. 666.

[7] In C. O. Burns Co. v. W. F. Burns Co. (C. C.) 118 Fed. 944, Judge Thomas referred to a delay of 18 months as one reason for denying preliminary injunction. This is the only case at all approaching the facts at bar. It did not appear that the infringement had been deliberate and calculated, and that is enough, I think, to distinguish it from that at bar. Except for it, it is apparent that the delay at bar is not within any of the cases. Whether the doctrine can in any event apply to a case of deliberate simulation, I need not consider.

[8] Of Gluck's assertion that he had sold out his business, it is enough to say that he does not swear that he is in no capacity still connected with the vendee. The right of a defendant to avoid an injunction because he has ceased to infringe is always conditional upon his showing affirmatively that he has wholly abandoned the business. Even then courts have often thought that as the writ cannot harm him, and as it may protect the plaintiff, it should issue.

The plaintiffs may take a preliminary injunction against any sale of the revolvers annexed to the moving papers. I do not find it necessary or proper to point out those details whose change would make them innocent in the future. The case is not one in which I feel disposed to help the defendants. There will be no stay pending an appeal. Later, if the defendants can show that with the exercise of the utmost diligence they have been unable to prosecute an appeal this spring, I will consider some modification of the order; but for the present the case seems to me clear enough, and the plaintiffs' grievance so substantial, that I am not willing to subject them further to this kind of competition.

Settle orders on notice.