AUTO PNEUMATIC ACTION CO. v. KINDLER & COLLINS et al.

(Circuit Court of Appeals, Second Circuit. November 13, 1917.)

No. 29.

1. PATENTS ⊙⟶328—VALIDITY AND INFRINGEMENT—PIANO PLAYER.
   The Danquard patent, No. 766,601, for a mechanical piano player contained within the piano case, was not anticipated in the prior art and discloses patentable invention; also *held* infringed.

2. PATENTS ⊙⟶32—INVENTION—COMMERCIAL SUCCESS AS EVIDENCE.
   While the mere success of an invention does not determine its patentability when it follows a long history of failure, it puts upon one who challenges its originality the burden of showing that the success arose from some cause which had nothing to do with the difficulties of invention.

3. PATENTS ⊙⟶168(1)—CONSTRUCTION—ARGUMENTS IN PATENT OFFICE.
   Arguments made in the Patent Office by the applicant to the examiner are not to be taken as a measure of his patent, where not accompanied by any changes in the claims.

4. PATENTS ⊙⟶109—VALIDITY—AMENDMENT OF APPLICATION.
   The rule that an applicant must not introduce a new invention by amendment does not forbid the adding of new claims from which an element of the original claims is omitted, even though it results in expansion, when the whole disclosure readily suggests the change, and there are no intervening rights.

Appeal from the District Court of the United States for the Southern District of New York.

Suit in equity by the Auto Pneumatic Action Company against Kindler & Collins, the Claviola Company, the Superior Pneumatic Ac-

tion Company, and the Needham Piano Company. Decree for complainant, and defendants appeal. Affirmed.

This is an appeal from a decree of the District Court for the Southern District of New York (A. N. Hand, District Judge, presiding), holding valid and infringed claims 26, 27, and 31 of patent 766,601 to T. Danquard, August 2, 1904. The patent relates to mechanical players attached to pianos known as "pneumatic self-playing instruments." These are of two sorts—those which are embodied in the piano case and those which form a separate unit, which is wheeled back and forth from and to the piano board and plays directly upon the keys. The patent in suit is of the first sort, and operates, as all of such kind do, by means of pneumatic bellows, the collapse of which under suction operates a mechanism connected with some part of the piano action. The patent does not concern either the pneumatic bellows or the mode of their actuation through a tracker sheet. It touches rather the connection between the exhaust bellows and the piano action, and the integration of all the parts into one unitary structure, which may be moved into and out of the piano case without any reorganization of its parts. The important features of the invention consist of upright rods, called the "abstracts," which through the mediation of a pivoted piece of wood, called the "striker," directly touch and move the "wippen" of the piano action when the bellows are collapsed by a vacuum. When the mechanical attachment is not in operation, the piano action itself is quite as free as though the player were not attached, and the piano may be manually played without the slightest effect upon its tone.

An important feature of the invention is the structure of the "striker," which the patentee supposed he had much improved by making it resilient or cushioned. This feature of the patent, however, need not be considered in detail, as the defendant did not copy it, but used a solid block or cap as a striker, without any resilience. A more detailed description of the patent can only be obtained by an examination of the specification. Sufficient has been stated to show in general the elements upon which this case turns. The claims are as follows:

"26. A manually and mechanically operative piano having grouped above the keyboard and in front of the piano action the following devices: A wind chest, pneumatics operatively connected to said chest, a tracker and music sheet rolls, air conduits connecting the tracker and pneumatics, abstracts, and pivoted vertically swinging strikers, operating the piano action and actuated by the abstracts and arranged above the level of the pneumatics; said grouped devices being adapted for removal together from the instrument case.

"27. A manually and mechanically operative piano having grouped above the keyboard and in front of the piano action the following devices: A wind chest, pneumatics operatively connected to said chest, a tracker and music sheet rolls, air conduits connecting the tracker and pneumatics, abstracts operated by the pneumatics, pivoted vertically swinging strikers operating the piano action and actuated by the abstracts and arranged above the level of the pneumatics, and adjustable stops regulating movement of the action by the pneumatics and strikers.

\*      \*      \*      \*      \*      \*      \*      \*      \*      \*

"31. In a mechanical musical instrument, the combination with the action wippens *4*, of a tracker *15*, rolls *14*, *16*, adapted to carry a music sheet over the tracker, pneumatics *24*, air conduits and valves connecting the tracker and pneumatics, upwardly extending abstracts *25* coupled to movable walls of the pneumatics, and pivoted strikers arranged above said pneumatics and adapted to be swung vertically by the abstracts against the wippens *4* for operating the piano action; all of said parts being arranged above the keyboard and in front of the piano action."

The defendant's infringing player is of the same class as the patent in suit, and indeed differentiates only in the character of the "striker." As appears in the claims, the "striker" of the patent is pivoted to swing vertically, and this feature the defendant originally adopted, but later, on consultation with its attorney, it varied its structure in this respect and sur-

rounded the upper end of the "abstract," which extended from the bellows to the "wippen," by a guide, consisting of a fixed horizontal piece of metal with a hole in it, through which the "abstract" freely moved, but which held it against lateral displacement.    On the top of the "abstract" the defendant fixed a solid block, which bore directly on the under side of the "wippen," substantially as the defendant's "striker" bore.

The prior art, as has already been stated, had developed in two directions: the earlier being toward cabinet players, which were wheeled to and fro and played directly upon the keyboard.    These were of many forms, which it is not necessary to consider, except to say that the nearest approach to the structure of the patent in suit is that contained in Courville, 755,364.    The general internal disposition of parts in this mechanical player was nearly identical with that of the defendant.    It operated by an exhaust which collapsed the several bellows, each operating one "abstract," which ran from the lower end of the bellows and through a guide similar to the defendant's, and terminated in a block or "striker," which bore on the lower side of a finger lever; itself actuating the keys.    The defendant contends that it has done nothing more than substitute within the piano case a smaller attachment built after the lines of Courville, and this is substantially true.

Of the mechanical piano players in the second class, to which the patent belongs, the nearest anticipations are Brown, 581,390, Wright, 596,730, and Welin, 731,089.    In Brown's action each bellows had a pin, or "abstract," extending downward, and fastened to an angle lever, which was rigidly attached either to the "abstract" of the manual action, or to the key lever itself. The collapse of the bellows raised this pin and imparted its motion to the "pin" or "abstract," which in turn operated upon the "abstract" of the manual action.    In Wright's patent the collapse of the bellows pulled up a downwardly depending rod, which was caught under the loose side of a swinging lever.    The free end of this lever bore upon the "abstract" of the action in a way not clearly shown in the patent.    Yet the showing requires the assumption of some angle lever attached to the "abstract," similar to that of Brown's, else it is impossible to see how it could operate.    In Welin's patent the motion was imparted to the "abstract" of the manual action through a lever, attached to it, against the free end of which an upward rod, actuated by the bellows, was pushed when the note was to be struck.    It therefore required some addition to the "abstract" of the manual action itself, just as did Brown and Wright.

Those mechanical players which are not incorporated into the body of the piano, after a season of some popularity have disappeared from the market, and the only player which still remains is the plaintiff's.    Brown's patent never went into much practical use, and has in any case now been displaced. None of the others succeeded, being crowded out by the plaintiff's player, made substantially in accordance with the patent, with the possible variation of the elastic element of the "striker."    This mechanical player has been widely sold and has acquired substantial popularity.

The applicant in his file wrapper originally incorporated, not only the specification as now stated, but a mechanism for a folding pedal, which was afterwards divided out, and in this original application there was no claim of a sort similar to those now in suit.    In all the claims an elastic "striker" was an element, except in those covering the pedal.    The specification, moreover, at that time did not contain the following passage, this being introduced some three months later, at a time when the claims were extended to include a combination in which there were no elastic strikers (page 3, lines 83-90): "As regards relative arrangement of the pneumatics their abstracts, the pivoted strikers, the action wippens and the adjustable stops regulating movement of the action of the pneumatics and strikers, it is immaterial whether the strikers be elastic or not.    In other words, the strikers may be made without slot 35, giving them elasticity."

Thomas A. Hill, of New York City, for appellants.
Louis W. Southgate, of New York City, for appellee.

Before WARD and ROGERS, Circuit Judges, and LEARNED HAND, District Judge.

LEARNED HAND, District Judge (after stating the facts as above). [1] The most important question in this case is the validity of the patent as against the prior art. Concededly the best anticipation is Brown's patent for a mechanical player contained within the case. Literally this does not come within any of the claims, for the "strikers," though actuated by the "abstracts," as Danquard calls them, or the "pins, 19," as Brown speaks of them, are arranged below the lever of the bellows and not above. This prevents a literal anticipation of claims 26 and 27, and similarly prevents anticipation of claim 31, in which the "strikers" must operate against the "wippens" of the manual action. This might seem to be, especially as concerns claims 26 and 27, a somewhat immaterial matter; but when the structure is more carefully regarded the difference assumes much greater importance. It is impossible to see—at least, no one has been able to devise it—how, if the "strikers" are below the level of the bellows, they can operate upon the manual action without some angle lever or its equivalent, attached either to the key lever or to the "abstract" of the manual action. If the "striker" were below the bellows, the bellows must be so far raised in the case as to put the tracker rolls and the bellows themselves on top of the case, an unworkable arrangement. The same difficulty exists in the case of Wright, 596,730. Now it is true, respecting Wright, that figure 1 shows the swinging lever impinging directly upon what the specification called the "abstract," and it might be conceivable that the whole player was raised high enough, so that the end of the lever touched the under side of the "wippen"; but nothing of the sort is suggested in the specifications, and the same objection would apply as we have mentioned in the case of Brown, that to do so would raise the whole mehanical player above the top of the case. It is pretty safe, therefore, to suppose that, when Wright speaks of operating upon the "abstract," he necessarily presupposes some piece, permanently attached to the "abstract" of the manual action, against which the free end of the lever will bear; the "abstract," being itself a straight rod, could otherwise not be moved.

Welin's patent, 713,089, is even more obviously subject to the same criticism, and it therefore appears that the art prior to Brown had not devised any internal mechanical player which operated directly upon the manual action without the addition of something permanently affixed to the "abstract." This was an obvious disadvantage, because, in a mechanism so fixed in form and so delicate in adjustment as a piano action, it was a matter of no small consequence that it should be left without any added weight whatever. How far such weights as the angle levers of Brown and Wright and the movable levers of Welin actually affected the playing mechanism may perhaps be open to some question; but that it might be regarded by the owners of the piano themselves as a disadvantage, even though it could not be shown to be such, is quite obvious. Moreover, even if this were not the case, the adjustment of those levers was a complicated and laborious device.

It is true that it was conceded upon the trial that the Brown patent was removable as a whole from the piano instrument; but this does not touch the fact that the bracket or angle lever must be attached to each of the abstracts separately, even though the "pins, *19*" might be removed from their connection without being separately disengaged, a question at least open to doubt. We think, therefore, that within the division of the art to which this patent belongs the court below was right in saying that the invention was a new one.

The defendant is correct in saying that it has done no more than adapt the patent of Courville, 755,764, so that it shall be contained within the case. Its argument is that in so doing it did no more than to reduce the size of Courville, and that a mere reduction of size cannot be the basis of a patent, any more than any other new use of Courville's instrument can be deemed such. More could be said for this contention, were Courville adaptable as it stood by a mere reduction of size to a mechanical player contained in the case; but in some details at any rate this is not true. The finger levers, $N^2$, of Courville, operated upon the notes, while the defendant's "strikers" operate upon the "wippen." The finger levers had to be eliminated before Courville could be used, and such a mechanical change at least forbids the defendant's player from being considered literally as a new use of Courville. The change, taken by itself, is undoubtedly a small one; but it requires a consideration of how far one part of the art was at once readily transferable to the other.

Mechanical players had been in existence since 1880, the application date of Needham & Fowler's first patent, 238,145, and in their first forms were permanently fixed within the instrument itself. This method continued for some time, but they required to be specially built into the pianos for the purpose, and the player might be thought to affect the action. It was concededly an advance to devise removable players, and, when the art attempted it, it created both the movable cabinets and the players within the case at about the same time, Parker & White, 592,641; Brown, 581,390. Yet the cabinet player was in every sense less desirable than one contained in the case, and must be accepted as a concession to the difficulties of a removable case player, especially as it has disappeared in the face of Danquard's patent. We think it quite safe, therefore, to say that Courville was not obviously adaptable into a case player and that the subsequent attempt of the defendant to make it available as such depended upon suggestions which it obtained altogether from Danquard. The history of the art forbids any ready assumption that the change was within the scope of an ordinary artisan before Danquard appeared.

[2] It is true that there had been mechanical players, like Parker, 560,303, and White and Parker, 573,427, which operated directly on the "wippens"; but in all of these the player had been built into the piano permanently, and, when removable players were first so built, these patents did not in fact suggest the first answers to the problem. As is common in such cases, the final solution appears to be very close to several of the earlier answers; but we think that the long interval

during which the need existed, and the success which the final step at once secured, justifies us in refusing to substitute our own ideas of a prior obviousness. We are well aware of the risk of assuming that the mere success of an invention determines its patentability; but, when it follows a long history of failure, we think it puts upon one who challenges its originality a duty of showing that the success arose from advertising, exploitation, or the removal of external commercial conditions, which had nothing to do with the difficulties of invention.

The issue of infringement is verbal; it turns upon whether the defendant uses a pivoted "striker." Literally it does not, and the issue becomes one of equivalents. The "striker" performs its duty only at its free or movable end. Under the impulse of the "abstract" this end is pushed up against the "wippen" and falls of its own weight when the "abstract" is released. The pivot is simply to keep the "striker" in its lateral position; the small arc through which its end moves being of .no consequence practically. A guide to keep the "striker" in its position precisely answers the purpose of the pivot, for it allows a free vertical motion of the operating end of the "striker," and at the same time keeps it from displacement as a whole. It would be, we think, a mere evasion of the claims to confine the patentee to the exact words which he used.

[3] The defendant, however, insists that the distinction which the applicant made of Brown's patent to the examiner should estop him here. It is true that on May 4, 1904, the applicant did distinguish Brown's "strikers," which turn only axially from his own pivoted vertically swinging "strikers"; but we attach no significance to his action, for no change in the claims accompanied it. For whatever reason it may have arisen, it is of course true that a patent, unlike other formal instruments of the sort, although it is the final embodiment of the purposes of the parties, is subject in its interpretation to the prior negotiations of the parties in a single instance. Whether or not this is legally an anomaly, so far as we know there is no decision which goes further than to hold that, where the applicant has assented to changes in a claim upon a reference in the Patent Office, he may not, by subsequent construction, resort to the elements which he has thus abandoned. We are far from being willing to establish a rule that arguments made in the Patent Office by the applicant to the examiner are to be taken as a measure of his patent. We read the claims as they are written, like the language of any other formal statement drawn up as the final memorial of the parties' intentions, and we decline to consider what was said arguendo during the passage of the case through the Patent Office, or any other of the preliminary negotiations which the patent itself was intended to subsume.

[4] Finally, the defendant insists that the applicant broadened the scope of his invention when he added the passage heretofore quoted in the statement and added new claims for nonelastic "strikers." The rule that an applicant must not introduce a new invention cannot be applied with dialectical rigidity, or it would forbid any change in claims which introduced any new element, for all elements of a claim are necessary parts of the invention. The case at bar is no different from

Hobbs v. Beach, 180 U. S. 383, 395, 21 Sup. Ct. 409, 45 L. Ed. 586, where an entire element was omitted in an amended claim, which had been inserted in the original. If the whole disclosure remains unchanged, and no intervening rights have arisen we do not cut so fine. It may be that the rule is no more than one of degree; but we know of no cases which forbid the omission of elements, even though they result in expansion, when the disclosure readily suggests the change. We think it no objection that the suggestion may arise from a further knowledge of the art which discloses that broader claims always were possible, so long as there are no intervening rights. In such cases the specifications suggest the change, but the applicant's mistake upon what preceded him has deceived him. This he may correct, at least when the departure is not too wide. In the case at bar, the change was no more than to omit an improved form of the striker; the specification readily suggested the inclusion of any form of striker.

The decree is affirmed, with costs.