### HARMON PAPER CO. v. PRAGER et al.

(District Court, E. D. of New York. July 19, 1922.)

1. **Patents ☞328—1,344,570, for wall paper, void for lack of invention.**

The Warren patent, No. 1,344,570. claims 2 and 3, for a wall paper having a cloud effect of visionary depth, *held* void for lack of invention; also, *held* not infringed.

2. **Patents ☞36—Commercial success not proof of invention.**

Commercial success is not proof of invention, but is one of the tests of originality and of the failure of others to appreciate what may be only a slight change from the prior art, though it may be due to a demand having nothing to do with the degree of inventive change.

3. **Patents ☞119—Design patent not intended for protection of manufactured product.**

It is not the purpose of a design patent by representing or describing its general appearance to protect the product of a manufacturing process.

4. **Patents ☞116—Specification of design patent.**

A design patent need not have a detailed specification unless without it the design cannot be understood.

5. **Patents ☞328—54,152 for design for wall paper, invalid.**

The Warren design patent, No. 54,152, for design for wall paper, *held* invalid, and also not infringed.

In Equity. Suit by the Harmon Paper Company against James G. Prager and the estate of Hugo Prager, deceased, doing business as the Prager Company. Decree for defendants.

Pennie, Davis, Marvin & Edmonds, of New York City (William H. Davis and George E. Middleton, both of New York City, of counsel), for plaintiff.

Briesen & Schrenk, of New York City (Hans v. Briesen and Fred A. Klein, both of New York City, of counsel), for defendants.

CHATFIELD, District Judge. The plaintiff is the assignee of three patents taken out by one Warren, of which two are involved in this action. All three patents relate to the manufacture of wall paper from wood pulp, and were involved in a suit by this plaintiff against the Kimberly Clark Company, in the Eastern district of Wisconsin, which was tried at the May term of that court, and decided in an opinion dated the 15th day of May, 1922, in favor of the defendant; the court holding all three patents invalid for lack of invention or for unpatentability.

The first patent, No. 1,344,570, issued June 22, 1920, is stated in the specification to be for an invention relating to "methods of making wall paper with a cloud effect of visionary depth," and "to wall paper produced by such methods."

There are three claims to the patent. Claim 1 is for the method, "which consists in forming a base of paper stock combined with wood flour to break up the light reflecting surface of the paper, and flowing a blending stock on the surface thereof." Claim 2 is for the paper, "having a base with a light reflecting surface broken up by wood flour, and a blending stock forming a cloud effect thereon." And claim 3 is for a paper, "having a base of paper stock mixed with a material breaking up the light reflecting surface thereof, and also having a blending stock forming a cloud effect on the top surface of the base."

In the present action infringement is charged of claims 2 and 3 of this patent. In the action in Wisconsin all three claims were involved.

The second patent, No. 1,344,603, issued June 22, 1920, is said to relate to "paper making apparatus," with particular reference to an arrangement for "applying a coating to the paper base with a degree of uniformity heretofore impossible."

The claimed invention of this device relates to the formation of a storage box and an apron for applying the upper coating or bleaching mixture to a paper base. This paper base is described as having been produced upon the Fourdrinier wire of a paper making machine previously well known in the art, and described in a patent issued to Waite & Walker, No. 1,017,931, dated February 20, 1912.

The invention of the Warren machine lies in the arrangement of baffles and a different construction of the feeding mechanism, although the Waite & Walker machine is intended to produce paper with a mottled or variegated appearance known as a "cloud effect."

The third patent is for a design, No. 54,152, issued November 4, 1919. The only statement of the specifications is that the figure "is a plan view of a piece of wall paper, showing my new design," and the claim is for "the ornamental design for wall paper, as shown."

In the present action the defendant is an importer who, according to the testimony, had been selling for a number of years prior to the War and since the signing of the Armistice has sold wall papers made in Germany by methods which have not been shown in detail in this action.

For obvious reasons the plaintiff has not sued the defendant for infringement of the device patent, nor for claim 1 of the method patent, but has charged infringement of the design patent, and of claims 2 and 3 of the method patent, describing the product or wall paper having the so-called "cloud effect of visionary depth."

[1] The prior art shows wall papers produced by printing or stamping, which necessarily employs in repetition a design prepared in advance. It also shows wall papers made from a colored mixture of various materials, particularly wood pulp, and which are generally described as ingrain papers.

According to the testimony there has been known in the art for some 14 years what are called "oatmeal" papers, consisting of a base

of wood pulp with an upper layer or additional mixture of wood flour of a different color. This wood flour is a coarse form of wood pulp, said to be produced by grinding the wood so as to separate the fibers longitudinally, and presenting by the difference in color and the difference in size or shape of the particles, a rough or flaky appearance described very suggestively by the word "oatmeal."

The prior art also shows certain duplex papers made with two layers of wood pulp, and in some instances with oatmeal paper forming the upper layer.

The prior art shows also what are known as "blends," which apparently are produced by such a method as that described in the Waite & Walker patent, where the mottled or cloud effect is produced by flowing onto the soft pulp or the base (before dried and pressed) a quantity of bleaching material or bleached pulp, producing the so-called clouds or marbleized appearance. This marbleized paper according to the testimony has been used for various purposes, including that of wall paper, where an imitation marble or hard reflecting surface was not objectionable or was desired. See, also, British patent to Imray, No. 6849, of 1904, and German patent to Lutz, No. 190,347, published October 24, 1907.

The greatest drawback in the use of these so-called cloud blends or marbleized papers, for the purpose of ordinary wall paper, consisted in the inability to match different strips sufficiently well to conceal the line of matching. Some attempts, according to the testimony, were made to apply the blending or bleaching material directly to the wood pulp or ingrain papers. If the bleaching material was made sufficiently dilute to secure an even flow, the mottled or cloudy effect was lost by the production of a thin layer over the entire surface. If the bleach was dropped on or applied in spots, the marbleized effect might be produced, but the paper was not available for matching the various strips when placed upon the walls.

Warren attempted to break up the so-called marbleized or cloud spots, and conceived the idea of accomplishing this result by applying his blend or bleached pulp to the so-called oatmeal paper, in order to try the effect of the soft background and to retain the so-called depth in appearance of the surface of the paper while distributing the patches of cloud.

The base or web passes through the machine at a speed of some 300 feet per minute. The application of the blend or bleach is regulated by the workman according to his experience, and in practice is applied at the rate of some 40 feet per minute.

Warren found that this difference in speed, when using the rough or scratchy surface of the oatmeal paper, occasioned a pulling out or raking effect upon the bleach, which successfully broke up the blotches or spots of the bleached blending pulp, and this coupled with the rough surface of the oatmeal paper produced what is described as the "cloud effect of visionary depth."

In practice he was using the old Waite & Walker machine, and applying his bleached blending material to oatmeal paper, rather than to ingrain paper; and assuming, as decided by Judge Geiger, that the

device patent shows no patentable invention, he was making merely obvious mechanical changes in properly applying the bleach, in a way taught by the Waite & Walker patent, to a product well known even at the time of Waite & Walker, viz., oatmeal wall paper.

Judge Geiger has held that Warren did not make plain or disclose to the Patent Office that he was merely substituting an oatmeal paper base for a so-called ingrain or ordinary wood pulp base, without the exercise of any invention, and that he was only attempting to obtain the result by describing the difference in appearance of the product when used with one material as distinguished from the product when used with the other.

When Warren said "a wall paper having a base with a rough surface and a blending stock forming a cloud effect thereon," he was merely using oatmeal paper as in the prior art; but when he said "a wall paper having a base with a light reflecting surface broken up by wood flour," instead of the words "with a rough surface," he obtained a patent because the Patent Office did not appreciate, and was not told by Warren that the "rough surface" and the "light reflecting surface broken up by wood flour" were the same old "oatmeal" of the preceding eight or ten years of the art.

[2] The question is a narrow one because the idea used by Warren has been commercially successful and had not been previously used. Commercial success is not proof of invention, but is one of the tests of originality and of the failure of others to appreciate what may be only a slight change from the prior art. Smith v. Goodyear, 93 U. S. 486, 23 L. Ed. 952; Potts v. Creager, 155 U. S. 597, 15 Sup. Ct. 194, 39 L. Ed. 275; Globe Knitting Works v. Segal, 248 Fed. 495, 160 C. C. A. 505. The commercial success may be due to a demand having nothing to do with the degree of inventive change. Hubbell v. Gen. Elec. (C. C. A.) 267 Fed. 564; Minerals Separation, Limited, v. Hyde, 242 U. S. 261, 37 Sup. Ct. 82, 61 L. Ed. 286.

As Judge Geiger holds, not only was the improvement obvious from the prior art, such as the Imray and Waite patents (supra), but the commercial demand was one for novelty in the general run of oatmeal paper rather than for a newly invented kind of paper. See Auto P. A. Co. v. Kindler & Collins, 247 Fed. 323, 159 C. C. A. 417.

From this point of view, the large sale of the so-called "Harmonella" papers of the plaintiff arose from their novelty, and not from their possession of an invention which had just been discovered.

But the plaintiff's claim of invention of a new method and a new paper (as a substance or product) can be supported as the invention of a new putting together of old or well-known elements only when this product has never before been described either directly or in plain teaching of an indirect description.

Here Warren was getting an appearance, an effect upon the eye; but his substance differed not at all from the marbleized or "cloudy" effects of Waite, when Waite was using his machine to make wall paper, or when Imray was running differently dyed pulp upon other pulp upon the wire cloth, except that Warren realized and explains

the drawing out and breaking up effect of the different rates of speed, and noticed that wood flour in the wood pulp increased this result.

He evidently was urging upon the Patent Office a novel description of how such an effect could be obtained, and without the statement that his material for accomplishing the result was pulp for "oatmeal" paper, and was a well-known substance of the prior art, his specifications and claims seem to describe a new combination of wood flour, wood pulp, and bleach to attain a new result.

When, however, the specifications set forth merely a heretofore unused (in commercial practice) combination of oatmeal paper pulp with a bleached pulp, in exactly the same combination taught by Waite and Imray, then a clear definition or description of why the paper looks different, and why the "cloudy" effect has depth, and is broken up so as to be fine enough in design to make "matching" easy, does not of itself show invention.

The question is too close to show with any certainty that the decision of Judge Geiger is too severe or is erroneous, and the explanation of the Patent Office action is so obvious that the presumption in favor of the patent disappears.

The defendant contends that the plaintiff, irrespective of the issue of validity, has not shown infringement. While no definite evidence has been presented as to the precise methods of manufacture of the product sold by the defendant, and while the defendant has not completely explained away the inferences to be drawn from similarity of material and appearance, nevertheless the impression is conveyed, by the testimony, that the defendant is following more closely the methods of the prior art than the precise method shown in the Warren patent, and therefore a determination of the issue of infringement presents no additional difficulty to the disposition already made of the suit with respect to the product claims.

[3] The design patent is plainly invalid if considered as an attempt to protect a product by suggesting or describing the general appearance of such product and calling this a design. N. Y. Belting Co. v. N. J. Rubber Co., 137 U. S. 445, 11 Sup. Ct. 193, 34 L. Ed. 741. Nor is the design patent infringed if the picture be viewed as a definite pattern, whether for exact reproduction in repeated use, or for a single combination of lines and shading.

[4] A design patent need no longer have any detailed specification. Dobson v. Bigelow Carpet Co., 114 U. S. 439, 5 Sup. Ct. 945, 29 L. Ed. 177. Nor is a specification necessarily improper (Dobson v. Dornan, 118 U. S. at page 14, 6 Sup. Ct. 946, 30 L. Ed. 63), and is in fact required if without it the design cannot be understood (Bates v. Coe, 98 U. S. 31, 25 L. Ed. 68; West Disinfecting Co. v. Frank, 149 Fed. 423, 79 C. C. A. 359; In re Mygatt, 121 O. G. 1676).

[5] But because of these propositions, no one can seek to claim protection for a design which is not to be used as a design and which is merely a sort of index or sign post to indicate the surface or substance observable upon all articles of the sort. As has been said, if the design patent be held valid as a "pattern," it is not infringed, and, in the sense claimed by the plaintiff it is not valid.

The bill will be dismissed.