## ANGELUS SANITARY CAN MACH. CO. et al. v. WILSON et al.

(Circuit Court of Appeals, Ninth Circuit. August 3, 1925. Rehearing Denied September 14, 1925.)

No. 4420.

1. **Patents ⊜⟾328—1,203,295, claims 2 and 4, for can-heading machine, held valid and infringed.**

Wilson and Sumner patent, No. 1,203,295, claims 2 and 4, for capping and compressing can heads and double-seaming without use of solder, *held*, valid and infringed.

2. **Patents ⊜⟾168(2) — Amendment to avoid references to other patents held not to limit patentee to specific construction.**

Patentee of can-heading machine, if limited to form and language of claim as allowed be-

cause of amendment to avoid references to other disclosures, is not thereby limited to specific detailed construction, nor is he estopped from claiming by the amended claim every improvement and combination which he has invented, and which was not disclosed by those references.

3. **Patents ☞237—Difference in use of mechanical equivalent does not avoid infringement.**

The difference in use of a mechanical equivalent does not avoid infringement.

4. **Patents ☞236—Change of form or addition or subtraction of parts held not to avoid infringement by use of mechanical equivalents.**

One cannot escape infringement by adding to or taking from patented device by changing its form, or even by making it somewhat more or less efficient, while retaining its principle and mode of operation and attaining its results by use of same or equivalent mechanical means.

5. **Patents ☞325—Awarding two-thirds cost against plaintiffs held equitable.**

Where suit for infringement was originally brought under four patents, as to two of which master found no infringement, but found that three patents for which proof was taken were valid, and District Court *held* that they were valid and not infringed, and they were not involved in appeal, recommendation of master, that in proceedings had before District Court cost should be assessed two-thirds against plaintiff and, one-third against defendants, was equitable.

Appeal from the District Court of the United States for the Southern Division of the Southern District of California; John S. Partridge, Judge.

Patent infringement suit by Ray O. Wilson and others against the Angelus Sanitary Can Machine Company and another. Decree for plaintiffs, and defendants appeal. Modified, and as modified affirmed.

In this suit, wherein Wilson, Sumner, and others were plaintiffs and Angelus Sanitary Can Machine Company and Guenther were defendants, the District Court granted an interlocutory decree enjoining defendants and their agents from infringing claims 2 and 4 of letters patent No. 1,203,295, issued October 31, 1916. Defendants pleaded lack of invention and noninfringement. The patent relates to a can-heading machine.

The patentees state the objects of the invention are to provide a can-heading machine for placing the bottom ends on cans and double-seaming the covers on the cans after materials to be contained in the cans have been put therein—a particular object being to provide for a machine continuous in operation, whereby the can is conveyed continuously through the machine in the heading operation without start and stop movements; also to provide a can machine capable of greater rapidity than are the machines generally in use; also to provide means for feeding the ends of the cans to the can bodies and to provide a seaming mechanism by which the joints between the can body and ends will be effectively sealed by spinning the contiguous edges and the can top together in a double seam, while the cans are advancing through the machine. The machine receives cans and can tops simultaneously from the can top feeding device. It has two turrets with revoluble transfer means between. The first seaming operation is performed on the first turret by encircling the can top with a seam-forming means, while on the second rotating carriage the seam is rolled. Several cans are operated simultaneously. The claims involved are as follows:

2. In a can-heading machine, a revoluble carriage, vertically reciprocal can-supporting means on said carriage, means for coincidently delivering can tops and cans to the can-supporting means while the carriage is rotating, means encircling the can top for forming seams between the can tops and cans while they are advancing on a partial revolution of the carriage, a second revoluble carriage, means for supporting cans on said second carriage, means for transferring the cans from the supporting means on the carriage to the supporting means on the other carriage, and means controlled by the rotation of the second carriage for rolling the seam formed between the can tops and cans on the first carriage.

4. In a can-heading machine, a pair of parallel vertically extending shafts, one of which is tubular, means for rotating said shafts continuously in corresponding directions, a third shaft, extending through the tubular shaft adapted to be rotated in a reverse direction in relation to said tubular shaft, a gear mounted on the third shaft, a crosshead on the tubular shaft, a series of spindles on said crosshead, pinions on said spindles meshing with the gear on the third shaft, can top engaging means on said spindles, seam-rolling means carried by said crosshead co-operating with the can top engaging means to roll the seams between the can tops and can bodies as they are spun by the rotation of said spindles during a partial revolution of the tubular shaft, means for supporting the cans to position the tops in operative relation to the seam-rolling means, means on the other shaft for

forming a seam between the can top and can body during a partial revolution of the shaft and while it is in motion, and means for transferring the cans from the seam-forming means to the seam-rolling means.

The device is described by reference to figures accompanying the specifications, but, without including the figures, the main features are as follows: There are four upright guide members placed in the feeding mechanism so as to dispose the can top stacked over pockets on a wheel so that each can top will be deposited immediately above a can that is being advanced by the wheel. The can-feeding wheel has a number of pockets made to engage the sides of the cans, which are fed to the pockets by means of can-engaging arms on opposite sides of a shaft. The cans and caps are delivered onto disks; the disks having rotary movement. The upper faces of the disks are arranged on a plane with the upper end of an inclined rail which ends adjacent to the path of travel of the outer edges of the disks as the latter are advanced by rotation of the first carriage. Other disks clamp the cans and caps in position on the disks. The means shown for forming the seams include a ring which slides on a flange on each disk and normally disposed concentric with the disk and its spindle by means of a spring-pressed ball in an annular channel formed on the upper face of the ring, with a socket in a pinion to receive the ball. There is a pinion on the lower end of a spindle meshing with a fixed gear rigidly mounted on a bearing. Each ring has an annular groove with an offset portion on its inner wall, the lower edge of which groove is formed by a flange which has an outwardly divergent lower face. Each ring constitutes an initial seaming device, designed to be put immediately above a can-receiving disk so as to engage the top of a can supported thereon. The disk will engage the top of the can and rotate it when the pinion is revolved by being carried around the stationary gear on the rotation of the first carriage. The rings are actuated to engage the flanges of the can covers and turn the lips of the flanges beneath an annular flange on the top of the can. This is effected by means of a cam disk mounted on the under side of the stationary gear. The cam disk has an arcuate face eccentric to the center of the shaft of the first carriage on which the outer faces of the seaming rings are adapted to bear. The cam disk engages the rings as the pinions are rotated to position. The rings are moved sidewise to effect the initial seaming operation and then returned to normal position after the seaming is done, when the cans and caps are positioned with the tops of the cans and caps within the rings. The rings encircle the same and center the cans upon the disks, and during the first operation the rings encircle the cans and can tops and produce a spinning of the metal edges. When the cans are released from the disks, they are moved to a second revoluble carriage by an arm carrying the can with its cap partially seamed across a platform; the can held by such arm being advanced and delivered to a disk reciprocally mounted in a second carriage where it is clamped between two disks. As the can and cap are moved forward in a carved path upon the rotation of the second carriage, they are subjected to double-seaming compressing rollers, formed with annular grooves adapted to engage the seam on the upper edges of the can. These double-seam rollers are mounted on lever arms which have wheels adapted to traverse a cam disk, the disk having an eccentric cam face by which the arms are rocked to increase gradually the pressure of the can seam compressing rollers on the can seam, and crowd the seam against the disk as the can is revolved by the disk. The cans with the seamed-on caps are then ejected from the disks to a suitable conveyor.

Appellants' machine has two revoluble turrets or carriages, one of which has a double-seaming mechanism to which cans and can tops are delivered while the carriage is in motion, and in operation the seam is formed while the can and can top are being advanced with the carriage; the second carriage having seam-rolling means to which cans are delivered from the first carriage. The can has no rotation around its vertical axis, but has what is described as a planetary action relative to the center of the turret. They argue that their machine produces a different character and quality of seam; that the Wilson machine is slower, because the curling die of the Wilson machine is of larger diameter, and, being rigid, acts on one side and over a very considerable arc of the can body and cap at any time, and therefore applies pressure unequally against the can body and cap on the chuck, turning down the entire circumference of the can during one and one-quarter revolutions of the can on its axis and the ring.

Chas. E. Townsend, of San Francisco, Cal. (Wm. A. Loftus, of San Francisco, Cal., and Oscar Lawler and James E. Kelby, both of

Los Angeles, Cal., of counsel), for appellants.

Raymond Ives Blakeslee, of Los Angeles, Cal., for appellees.

Before GILBERT, HUNT, and RUDKIN, Circuit Judges.

HUNT, Circuit Judge (after stating the facts as above). [1] Machines for capping and compressing can heads and double-seaming without the use of solder were old in the art when Wilson and Sumner entered the field. Two steps mark the operation: First, that by which the flange on a cap is bent partly around the can and body flange so as initially to interlock the flanges; and, second, that by which the interlocked flanges are rolled or curled to complete the seam. This litigation pertains principally to the first operation. Some of the earlier devices had two seaming operations and encircling seaming means, but it is not shown that any had continuously operating two turrets with a transfer means between, and means on the first turret for effecting a first seaming operation, and means on the second turret for producing a second and final seaming operation. It is on the combination of the parts and features of the whole machine that patentees claim a monopoly.

The proof is satisfactory that the structure of the Wilson and Sumner patent (for brevity called the Wilson patent) is such that in the first operation the gears are so arranged with relation to the rack that the can will make in the first turret approximately something over a single revolution, and that the tops are so tightly clamped on the cans during the spinning operation that the spinning or turning does not discharge any of the contents from the can. One of the expert witnesses testified: "It is this turning of the can in conjunction with the specific seam-forming device employed by plaintiffs by which forming the seam is effected." In defendants' machine the seam between the can top and the can is formed by holding the can practically stationary as it advances, and rotating the seam-forming mechanism relatively to the can. It is argued that the seaming rolls of defendants' device and the levers carrying the rolls are equidistant and opposedly disposed around the central axis of the rotating portion of the head, and so a quality of balance essential for speed and efficiency is attained. In operation, however, defendants' machine makes a bending of metal like that made in the first seaming operation, although the seaming rollers appear to impinge on the can and top to a somewhat less extent than do the rings in the Wilson machine. The fact that in Wilson's device there is a lateral movement of the ring in the first seaming means is not important; unquestionably impingement occurs in rolling contact with the can top.

Appellants refer to many patents in the prior art. Considering the more important: Brenzinger, No. 813,482, February 27, 1906, devised a can-heading machine of two stations, one for each operation, with a moving belt for carrying a can from one station to the other. He did not show two revoluble carriages; nor did he provide for coincident delivery of cans and caps to a first revoluble carriage. Moreover, his machine had an intermittent movement. In his seaming means for the first operation he had rollers which rotated about the can to form the curl of the seam. Black, No. 858,785, July 2, 1907, had two turrets and a continuously operating mechanism, and a turret with four spindles with flanging mechanism, and a transfer wheel with a disk and four can-receiving depressions in its periphery. In the transfer wheel he provided for the can receiving its top and delivery to the second turret. He shows the curler engaged while the compressor is disengaged, and both operations are performed on the same spindle while the turret is rotating. Distinction between Black's and Wilson's devices is that, although Black shows two turrets, he does not show one for the first seaming operation and the other for the second seaming. He rotated the rollers about the can, which is held against rotation around its own axis. The master commented upon Black's machine, saying that it was seven years after Black's patent that Wilson filed for a two-turret, continuous motion, double-seaming machine "in response to the demand created by the enormous growth of the packing industry, and it would seem in anticipation of urgent demands for a speedy machine created by the war." Guenther, No. 1,049,227, December 31, 1912, showed means for performing the first seaming operation by a pair of curling rollers carried on a sleeve adapted to be rotated around the central axis of the can; the can being centered by a flange cut out for the passage of the levers and curved rollers. Guenther's machine was intermittent. Wegner, No. 1,104,751, July 21, 1914, employed a single turret type machine in which the cans with can tops are rolled against the stationary seam-forming tool. His seaming means do not take a circular course of travel

around the cans, nor do they physically encircle the can and center it. In Wilson's mechanism continuity is due to the use of the two turrets for seaming with cap and can delivered to a first turret and transfer means operating between the revolving turrets all in synchronism by means of gears, shafts and spindles devised and arranged for the purpose.

[2] Appellants rely much upon the file wrapper which shows that Wilson's claim 2 (originally claim 6) was rejected and then amended to avoid references (Brenzinger, No. 813,482, Black, No. 858,785, and Wegner, No. 1,104,751) cited against them. Originally the claim did not have the words "encircling the can top" before the word "for," and prior to Wilson's amendment considerable correspondence was had between the Patent Office and appellants; Wilson contending that the references to Brenzinger and Black were not well founded. Conceding the principle that by amending Wilson is limited to the form and language of the claims as allowed, nevertheless he is not limited to any detailed specific construction to avoid any reference cited against it, nor is he estopped from claiming by the amended claim every improvement and combination which he has invented and which was not disclosed by those references. National Hollow Brake Beam Co. v. Interchangeable Brake Beam Co., 106 F. 693, 715, 45 C. C. A. 544; Owens Co. v. Twin Separator Co., 168 F. 259, 93 C. C. A. 561; Auto Pneumatic Action Co. v. Kindler & Collins, 247 F. 323, 159 C. C. A. 417.

To apply that principle: · The words "eccentric encircling ring" are not found in the amendment to claim 2; nor is the claim limited to exact features, as, for example, was the claim discussed in Wilson & Willard Mfg. Co. v. Union Tool Co., 249 F. 729, 161 C. C. A. 639, certiorari denied 248 U. S. 559, 39 S. Ct. 6, 63 L. Ed. 421. Therefore there should be no meaning put upon the words "encircling can top" by which there is a limitation to the eccentric encircling ring, unless the specifications and the drawings, which showed eccentric rings, taken in connection with Wilson's claim 2, make it obvious that he has limited his claim to the use of eccentric rings. The Patent Office may have distinguished Wilson's type of machine from others by reason or specification of the encircling in the first seaming means, but such distinction does not necessarily limit all other elements to that specified eccentric ring with a cam bearing upon it. Interpretation

of the claim as allowed may be broad enough to cover improvement other than is disclosed by the references cited against it. In National Hollow Brake Beam Co. v. Interchangeable Brake Beam Co., supra, the court, through Judge Sanborn, said: "The description in a specification or drawing of details which are not, and are not claimed as, essential elements of a combination, is the mere pointing out of the better method of using the invention. * * * A reference in a claim to a letter or a figure used in a drawing and in the specification to describe a device or an element of a combination does not limit the claim to the specific form of that element there shown, unless that particular form was essential to, or embodied the principle of, the improvement claimed."

[3, 4] We regard claim 2, in the element of encircling means, as entitled to a construction which includes a fairly liberal range of equivalents. The difference in the use of a mechanical equivalent does not avoid infringement. In Eibel Process Co. v. Paper Co., 261 U. S. 45, 43 S. Ct. 322, 67 L. Ed. 523, the court, through the Chief Justice, clearly reiterated the doctrine that where an inventor, though not a pioneer in the sense of having created a new art, has made a very useful discovery which has substantially advanced the art, his patent, though but an improvement on an old machine, may be entitled to liberal treatment. That same principle was applied by this court in Smith Cannery Co. v. Seattle Astoria Iron Works (C. C. A.) 261 F. 87. Defendants therefore cannot escape infringement by adding to or taking from the patented device by changing its form, or even by making it somewhat more or less efficient, while they retain its principle and mode of operation. and attain its results by the use of the same or equivalent mechanical means. Lourie v. Lenhart, 130 F. 122, 64 C. C. A. 456; Letson v. Alaska Packers Association, 130 F. 129, 64 C. C. A. 463; Eck v. Kutz (C. C.) 132 F. 758. By varying the encircling means, but producing the same results in substantially the same manner, there is infringement. Both physical and mechanical encircling with centering are found in defendants' machine. Union Paper Bag Machine Co. v. Murphy, 97 U. S. 120, 24 L. Ed. 935; Kinloch Telephone Co. v. Western Electric Co., 113 F. 659, 51 C. C. A. 362; Auto Pneumatic Action Co. v. Kindler & Collins, supra; Pangborn Corporation v. Sly Mfg. Co. (C. C. A.) 284 F. 217.

Without restating the mechanisms in further detail, the conclusion we must reach is that claim 2, when applied to Guenther's patent, No. 1,441,195, January 2, 1923, reads upon his practice and device.

Claim 4 of Wilson's patent was not amended in the Patent Office. In its detail it relates to a second turret. It is a description of the means for revolving the spindles or the seam-rolling means, and does not require the spinning of the seam-forming means or of the can that is being seamed, nor does it describe the seaming means as encircling the can top. The master's report contains an elaborate examination of the claim (4) in relation to defendants' structure and Guenther's letters patents, Nos. 1,441,195, January 2, 1923, 1,440,143, December 26, 1922, and 1,450,418, April 1923, and correctly concludes that the elements of the claim are found in defendants' machine, P–24. Defendants have added a shaft in one turret of their machine, but the mode of operation is not changed. It appears too that Wilson's machine has had substantial recognition, and in our opinion it constituted invention.

We hold, therefore, that the patent in suit is valid, and that claims 2 and 4 were infringed, and that plaintiffs are entitled to an accounting.

[5] The record shows that the suit was originally brought under four patents. As to one (a machine pertaining to seam-forming means and specific claims) no proof was taken before the master. As to two others (No. 1,250,406, a can top feeding device, and No. 301,348, a can-feeding device) the master found no infringement, but did find that the three patents referred to were valid. The District Court held that the three patents were valid and not infringed. These several patents are not directly involved in this appeal, for the reason that appellees herein took no cross-appeal from the interlocutory decree of the District Court. Appellants nevertheless urge as error the court's award of all costs to plaintiffs, appellees herein. It appears to have been necessary for the master to hear evidence with relation to the several patents, and we think his recommendations that in the proceedings had before the District Court costs should be assessed two-thirds against plaintiffs and one-third against defendants was equitable. But we think all costs on this appeal should be assessed to appellants.

As modified, the decree of the District Court is affirmed.