## In re STIRLING.*
### Patent Appeal No. 2620.

Court of Customs and Patent Appeals.
March 25, 1931.

John Boyle, Jr., and Wm. D. Shoemaker, both of Washington, D. C., for appellant.

*Rehearing denied May 27, 1931.

T. A. Hostetler, of Washington, D. C., for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GARRETT, Associate Judge.

Appellant is seeking patent on a design for cover paper, its principal use, as we understand it, being for the covering of walls— that is, wall paper.

The application was denied by the Examiner, whose decision was affirmed by the Board of Appeals of the Patent Office. From the latter decision the appeal was taken to this court.

The design is described in the specification as follows, reference being had to the drawing:

"The view is a plan of a sheet of paper, showing my new design.

"The black on the drawing represents streaks and blotches of one color on a background of another color represented by the stippled portions on the drawing, while the white on the drawing represents further streaks and blotches of a third color intermingled with the first mentioned streaks and blotches. The particular colors are immaterial."

The claim is for "the ornamental design for cover paper as shown and described."

There were three grounds of rejection which are tersely stated in the brief of the Solicitor for the Patent Office.

First. Lack of patentable invention under the ruling in Harmon Paper Co. v. Prager et al. (D. C.) 286 F. 267; Harmon Paper Co. v. Kimberly Clark Co. (D. C.) 289 F. 501.

Second. The design is dependent upon the process of making the design.

Third. The design is an imitation of marble.

The first and second grounds appear to us to be somewhat closely interrelated.

In the decision of the Board of Appeals there is a quotation from the brief which appellant filed before the Board, describing the process by which the design was produced. It reads as follows:

"A piece of paper which was crinkled to a very great extent so that innumerable creases extended in every direction and of different sizes was the starting point for the development of this production. In the creases of this crinkled paper a dark ink was

spread and the surface of the paper rubbed off so that the ink remained in the creases. It was found, however, that the streaks and blotches produced in the crinkled paper by filling the creases with ink were not sufficiently numerous to produce a design which would be pleasing to the eye. Consequently the next step was to multiply these in such a way that they would became numerous and at the same time the arrangement thereof would be maintained. This was done by successively photographing the paper on the same plate and moving the photographed sheet through an appropriate angle to obtain the results desired. Subsequently the results of this photographing process were transferred by well known methods to an engraved intaglio roll for printing. Even then it was found desirable to do the printing by means of an offset roll."

Before us it is insisted, on appellant's behalf, that it is well settled in design patent law that "the method of producing a design has no bearing upon the patentability of a design itself"; that the statements explanatory of the methods whereby appellant's design was produced were made in accordance with a custom prevailing in the Patent Office of making statements (we assume both formal and informal) in presenting technical features of applications "for the sole purpose of enlightening the examiner" upon the "question of whether or not invention was involved," and appellant's brief before this court says:

"These facts are before the Court not as a part of the application and therefore not a part of the pronouncements of the applicant himself, but only as opinions expressed by applicant's attorney and by the tribunals of the Patent Office. It is desired to point out that in deciding the patentability of this invention they should not be taken into account *except as they might have a bearing on the question of whether or not invention was involved.*" (Italics ours.)

It is thus conceded that it is proper for the court to consider the method of production as described in the language quoted, supra, from the opinion of the Board of Appeals as coming from appellant's brief before that tribunal, but only for the purpose of determining whether the design itself constituted invention. We have looked to it for that purpose only so far as the instant case is concerned.

It is quite well known to those conversant with the patent laws that there has never been any abstract, legal definition of invention which has been accepted as definitely fixing a complete and satisfactory rule by which applications, whether for mechanical, process or design patents, may be tested. The question, "What is invention in the legal or patentable sense," remains without any fully comprehensive answer. It is, however, universally recognized that certain fundamental elements must be present to constitute invention, and that, in the absence of these, no patentable right accrues to a producer.

The word "invention," as used in the statute, implies that the product thereof, or the method or process by which the product is created, must be the result of a preformed idea embracing the article, or the method, as a definite conception of the mind. It is not necessary that this prior conception shall be all-comprehensive and embrace all details, but there must be, to constitute patentable invention, a pre-existing idea of the end and purpose it is desired and proposed to accomplish. Invention contemplates the exercise of the imaginative faculties directed to the accomplishment of an end which the mental faculties have conceived. The article, or the process, at least to a degree, must have an existence in the brain before, or at the time of, being embodied in a product or described in a process.

When this principle is applied to appellant's wall paper design it seems obvious that, whatever may be the patentable status of the process by which he created it, the *design itself* is not the result of a definitely preformed conception in his mind of what it would be or is. The lines, streaks, blotches and stippled portions of the design and their fixation with reference to each other, as they appear therein, were not the children of his brain, but resulted haphazardly from certain movements or operations purely mechanical in their nature. The design itself was not thought out; it never existed in appellant's mind; his imagination foreshadowed something, no doubt, but that something was wholly indefinite, nebulous, uncertain. His intellect did not create the design; his brain may have invented the process, but it did not invent the product. Therefore, invention is lacking and hence he has no patentable rights, under the statute, upon this application.

It may be further said that the law is well established that a patent will issue only for something which one skilled in the art can reproduce. An exact reproduction of appellant's design, except by photographing

the design itself, would, we apprehend, be a virtual impossibility. Were the precise process by which he evolved it used, there is not even a remote probability that the result would be or could be identical.

In our reasoning in this case we see nothing inconsistent with that of the Supreme Court of the United States in Gorham Co. v. White, 14 Wall. (81 U. S.) 511, 525, 20 L. Ed. 731, so strongly relied upon by appellant here, nor with that of the Circuit Court of Appeals of the Third Circuit in Braddock Glass Co., Ltd., v. Macbeth, 64 F. 118, 120, 12 C. C. A. 70, 70 O. G. 1799, 1895 C. D. 271, also cited by appellant.

From a careful study of the opinions in those cases it is obvious that the issue here involved was not present in them. Indeed, it does not appear to us to have been even remotely suggested in either case.

In the Gorham Co. v. White Case the issue was as to an alleged infringement of a design patent for tablespoons and forks, the validity of the patent not being questioned.

In the course of the prevailing opinion the Supreme Court said:

"It is the appearance itself, therefore, no matter by what agency caused, that constitutes mainly, if not entirely, the contribution to the public which the law deems worthy of recompense. The appearance may be the result of peculiarity of configuration, or of ornament alone, or of both conjointly, but, in whatever way produced, it is the new thing, or product, which the patent law regards. To speak of the invention as a combination or process, or to treat it as such, is to overlook its peculiarities. As the acts of Congress embrace only designs applied, or to be applied, they must refer to finished products of invention rather than to the process of finishing them, or to the agencies by which they are developed."

The question of *invention* was not involved in the foregoing case. The question was as to similarity of appearance—sameness of effect upon the eye.

The matter reached the court with invention conceded. The court had only to deal with the issues existing *after* and *beyond* invention, and the language of the court must be studied upon that basis.

When, therefore, the court spoke of the "*appearance* * * * in whatever way produced," manifestly it was not considering, or thinking of, how the article was made, or whether the design was originally a conception of the mind, but whether the alleged infringer by "some peculiarity of configuration, or of ornament alone, or of both conjointly" had produced an article which so resembled the finished product of the patentee's invention as to infringe same. (Italics ours.)

The same issue of resemblance was involved in Braddock Glass Co. v. Macbeth, supra, the suit being for alleged infringement of a design patent for lamp chimney tops. We do not think the question of *invention* was in the mind of the court when it said:

"It has been made plainly obvious to us, and seems to be fully recognized by the trade, that the appearance of the patented design is very different from that of any other which had previously existed; and, this being so, the method of its production is irrelevant."

Obviously this means the method of the *production of the appearance*—that is, it refers to the form and configuration of the lamp chimney, and the matter of the mental conception, or inventive principle, involved in producing that appearance was not under consideration. The same thing was true when the court continued:

"The novelty of a design is to be tested, not by investigation of the means employed for its creation, but by ocular comparison of the design itself with the prior designs which are alleged to be substantially the same, and when tried by this test the novelty of the design covered by the patent in suit is made quite apparent."

Byram v. Friedberger (C. C.) 87 F. 559, 560, 82 O. G. 1420, 1898 C. D. 380, goes no further than the other cases cited, supra.

The particular language quoted in the brief for appellant from the Byram Case is:

"The subject for consideration is not the process of creation, but the effect produced upon the eye by the things created."

In all these cases the courts were dealing with the question of *appearance* and the *form, configuration*, etc., by which that *appearance* was produced. In none of them did the court find it necessary to consider the question of whether a mental conception of the design preceded or existed at the time of its physical production. This latter question is the one with which we are confronted, because the mental concept is an indispensable element of invention.

"The mental faculties employed in the inventive act are the creative not the imitative faculties. *An invention is the product of*

*original thought. It involves the spontaneous conception of some idea not previously present to the mind of the inventor.* Industry in exploring the discoveries and acquiring the ideas of others; wise judgment in selecting and combining them; mechanical skill in applying them to practical results; none of these are creation; none of these enter into the inventive act. *Only when the mind of the inventor originates an idea new to himself, if not to all the world, does he call into exercise his own inventive skill, and perform the mental portion of the inventive act."* (Italics ours.) Robinson on Patents, vol. 1, p. 116.

"An invention is the result of an inventive act; it consists in *conceiving* an idea and *re-,* *ducing it to practice.* An invention is the product of original thought; it is a concept, a thing evolved from the mind. It involves the spontaneous conception or 'happy thought' of some idea not previously present to the mind of the inventor; it is the creation of something which did not exist before. Such is the *mental part* of the inventive act." (Italics ours.) Walker on Patents, Lotsch Revision (6th Ed.) 66.

Of the design which appellant has offered for patent he had no mental concept; it did not originate in his brain; it required no mental act to conceive or produce it. Its production was mechanical, not the result of thought, but of the form which the crinkles in the paper chanced to take when the paper was manipulated by the hand.

Looking to the process of production, solely to see whether there was invention in the design, manifestly there was none.

We agree with counsel for appellant that the cases of Harmon Paper Co. v. Prager et al. (D. C.) 286 F. 267, and Harmon Paper Co. v. Kimberly Clark Co. (D. C.) 289 F. 501, presented a different state of facts from those here shown, and that for that reason these cases are not controlling in the instant case upon the grounds of rejection applied by us. The issue as to whether there was invention present, by reason of the method used in production, did not there arise in the manner in which it has arisen in the case at bar.

Under the view which we take of the issue, there is no necessity of our discussing the third ground, mentioned in both briefs, that "the design is an imitation of marble." The rejection for lack of invention was without error, and the decision of the Board of Appeals is affirmed.

Affirmed.